UNITED STATES of America, Appellee,

v.

Robert L. COMPANION, Appellant.

No. 157, Docket 76–1257.

United States Court of Appeals,
Second Circuit.

Argued Sept. 15, 1976.

Decided Nov. 10, 1976.

Richard B. Hirst, Middlebury, Vt., for appellant.

Jerome J. Niedermeier, Asst. U. S. Atty. (George W. F. Cook, U. S. Atty., District of Vermont, Rutland, Vt., of counsel), for appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from an order denying a motion to dismiss the Government's petition for revocation of probation and revoking appellant's probation. Appellant complains on appeal that he was not afforded the preliminary probable cause hearing mandated by *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), and that he was not taken before the court for the district having jurisdiction over him "[a]s speedily as possible after arrest," as

required by 18 U.S.C. § 3653, the statute governing probation revocation. As the court with jurisdiction over appellant, the United States District Court for the District of Vermont, James S. Holden, Chief Judge, issued the order appealed from. We affirm.

The facts may be briefly stated. In April, 1975, appellant pleaded nolo contendere to one count of an indictment charging him with interstate transportation of counterfeit securities in violation of 18 U.S.C. § 2314. In May, 1975, the district court suspended imposition of sentence and placed appellant on probation for two years, pursuant to 18 U.S.C. § 3651. The probation was subject to three conditions relevant here: that appellant restrict his travel to Vermont and New Hampshire, that he file written reports monthly with his probation officer, and that he notify his probation officer of any change of address. By late in the year, it appeared that appellant had violated these conditions and, on December 12, 1975, the district judge issued a warrant for appellant's arrest.

On January 30, 1976, appellant was arrested near Tucson, Arizona. The United States District Court for the District of Arizona declined to accept jurisdiction over him and, on February 13, 1976, after spending 14 days in the Pima County, Arizona, jail, appellant began a long, circuitous journey to Vermont for which federal authorities, primarily from the United States Marshal's office, were responsible. He was taken to assorted county jails and federal facilities in Arizona, Texas, Oklahoma, Kansas, Illinois, Indiana, Pennsylvania and New York before being returned to Vermont; his final stop was the Metropolitan Correction Center in New York City, less than 200 miles from the Vermont border, where he spent 26 days. On April 28 he was finally transported to Vermont, and he was brought before the district court on May 3.

At the district court hearing, appellant testified to a personal and family history of alcoholism and stated that in Arizona he was undergoing treatment at a facility op-

erated by a religious group called the "Lost and Found Ministry." He did not deny, however, that he had violated the conditions of his probation. The district court, denying appellant's motion to dismiss the Government's petition, revoked his probation and sentenced him to one year in prison, giving him credit for the time spent from his arrest in Arizona on January 30 to his hearing in Vermont on May 3, 1976, a total of 87 days.

### I. Appellant's Statutory Claim.

In attacking the validity of the district court's decision to revoke probation, appellant raises both constitutional and statutory arguments.[1] In recognition of our obligation to avoid deciding a case on constitutional grounds if a statutory ground is available, Ashwander v. TVA, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), we turn first to appellant's claim that he was denied his statutory right to be taken before the district court in Vermont (the court with jurisdiction over him) "[a]s speedily as possible after arrest." 18 U.S.C. § 3653.

In construing the words "as speedily as possible," we are writing upon a clean slate. Congress adopted that language in 1948, Act of June 25, 1948, ch. 653, 62 Stat. 1016, 1017, as a replacement for the somewhat stricter requirement that a probationer be taken before the court "forthwith," 18 U.S.C. § 3653 (prior to 1948 amendment), but it did not indicate a reason for this change.[2] We have located only one court decision involving an alleged failure to provide a hearing as speedily as possible, and that decision simply held, without extensive

discussion, that a time period of nearly four months between arrest and hearing, 84 days of which elapsed after the probationer's return to the district with jurisdiction, was too great. United States v. Reaugh, 398 F.Supp. 905 (M.D.Pa.1975) (warrant quashed). The words of the statute provide little assistance, since the realm of "possibility" might include a spectrum of actions from, on the one hand, transportation of the probationer to the appropriate district by the most expeditious means available (e. g., the first available plane flight from Arizona to Vermont) followed by an immediate hearing before the district court, to, on the other hand, transportation and the hearing occurring at a pace consistent with the bureaucratic exigencies and manpower problems that beset both the United States Marshals Service and some federal district courts.

We reject the construction urged by the Government, which would equate a probationer's statutory right to a hearing with a parolee's similar right. It is the established law of this circuit that, while a parolee is entitled to a hearing within a reasonable time after arrest, an unreasonable delay in granting such a hearing is not cause to release the parolee from custody unless he has been prejudiced by the delay. Shepard v. United States Bd. of Parole, 541 F.2d 322, 328–29 (2d Cir. 1976); United States ex rel. Blassingame v. Gengler, 502 F.2d 1388 (2d Cir. 1974) (per curiam); United States ex rel. Buono v. Kenton, 287 F.2d 534, 536 (2d Cir.), cert. denied, 368 U.S. 846, 82 S.Ct. 75, 7 L.Ed.2d 44 (1961). The parolee's right to a hearing without unreason-

---

1. Appellant also raises an argument related to the sentencing authority of the district court. He asserts that the Government's incarceration of appellant for nearly three months deprived the district court of its prerogative to impose a sentence shorter than three months. Whatever the validity of this argument in another case, it plainly has no force here. By sentencing appellant to one year in prison (with credit for the three months served prior to the hearing), the district court demonstrated—after the fact, to be sure—that its sentencing prerogatives had not been in any way preempted.

2. The 1948 amendments were principally designed to allow transfer of jurisdiction to the receiving district in cases in which a probationer wished to move from the judicial district having jurisdiction over him, where both courts concur. See S.Rep. No. 1544, 80th Cong., 2d Sess., reprinted in [1948] U.S.Code Cong.Serv. 2061. The Senate Report, and the substantially identical House Report, do not speak to the slight relaxation of time, however; perhaps it was simply to allow somewhat more administrative flexibility in an increasingly large federal correctional system.

able delay, however, is a judicially-created right; the statute granting the hearing does not mention when it must be held. *See* 18 U.S.C. § 4207; *United States ex rel. Buono v. Kenton, supra,* 287 F.2d at 535. The statute granting probationers a post-arrest hearing, by contrast, is quite explicit (if not entirely precise) as to time; the hearing must be held "[a]s speedily as possible after arrest." 18 U.S.C. § 3653. Since Congress has specified a time frame for probationers' hearings, the courts lack the power—which they have in the nonstatutory parole situation—to say that in some cases the length of time may make no difference at all. In view of the congressional mandate, we must give substantial weight to the length of the delay in determining whether a probationer has received the speedy hearing to which he is entitled under the statute.

An approach entirely dependent upon the length of the delay, however, is not satisfactory. Such an approach would require either that we specify exactly how many days' delay is too many, which would be arbitrary at best, or that we allow the district courts to decide on a case-by-case basis when a delay is too long, which would likely result in uneven treatment of similarly-situated probationers. In the parole violator situation, the courts have gradually developed a per se three-month rule, *see United States ex rel. Hahn v. Revis,* 520 F.2d 632, 638 n.5 (7th Cir. 1975); *Marchand v. Director, U. S. Probation Office,* 421 F.2d 331, 335 n.5 (1st Cir. 1970) (dictum), but the rule had its roots in a case-by-case process by which courts simply declared, without explanation, that certain delays were unreasonable, *United States ex rel. Buono v. Kenton, supra,* 287 F.2d at 536 (113 days); *United States ex rel. Hitchcock v. Kenton,* 256 F.Supp. 296, 300 (D.Conn.1966) (141 days); *United States ex rel. Vance v. Kenton,* 252 F.Supp. 344, 346 (D.Conn.1966) (123 days). *See also United States v. Reaugh, supra,* 398 F.Supp. at 906 (3¾ months is not "as speedily as possible"). Were we to adopt a similar three-month rule here, the 87-day delay in appellant's case would fall just short of being unreasonable, but there

would be an arbitrary quality to denying appellant's motion to dismiss on this ground while releasing from custody another probationer who had suffered, for example, a 92-day delay, especially where, as here, the probationer sat in a correctional center a short distance from the jurisdictional district for almost four weeks. *See Barker v. Wingo,* 407 U.S. 514, 522, 529, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) (specified period for speedy trial would be "rigid" and "inflexible").

An entirely time-based approach, moreover, would ignore other factors that appear to us to bear upon the meaning of "as speedily as possible." In the somewhat analogous context of the Sixth Amendment right to a speedy trial, the Supreme Court has identified three critical factors that must be balanced along with the length of the delay: "the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo, supra,* 407 U.S. at 530, 92 S.Ct. at 2192. We adopt this constitutional balancing test as the appropriate one for use in the statutory context of 18 U.S.C. § 3653. While the test necessarily involves a case-by-case weighing process and is in no sense "talismanic," 407 U.S. at 533, 92 S.Ct. 2182, its identification of four primary factors should provide lower courts with more guidance than would an approach based solely on the length of the delay. We emphasize that the factors are interrelated and must be considered together, and we recognize that other circumstances may be relevant in particular cases. *See id.*

█ Applying these four factors to this case, we find, first, that the delay here, while at the outer limits of reasonableness, was not quite as long as that in any of the cases cited above in which a delay was found to be unreasonable. The reasons for the delay certainly included significant, perhaps inexcusable, bureaucratic inefficiencies, but there were also more legitimate reasons, such as the remoteness of the defendant in Arizona from the place of sentencing, Vermont (although modern air

travel makes such distances of less consequence), and, so the Government claims, a shortage of personnel in the United States Marshals Service.[3] The defendant, moreover, did not assert his right to a speedy hearing until the delay was already a matter of historical fact, so that the most appropriate remedy—a hearing granted without any delay—could no longer be given. Finally, appellant has asserted no prejudice from the delay here. He does not claim that the delay caused him any disadvantage in contesting the alleged violation of probation by, for example, hindering his ability to present witnesses in his favor or evidence of mitigating circumstances. *See Barker v. Wingo, supra,* 407 U.S. at 532, 92 S.Ct. 2182; *United States ex rel. Buono v. Kenton, supra,* 287 F.2d at 536. Since none of the four factors weigh in appellant's favor, we conclude that he has not been denied his statutory right to a hearing "as speedily as possible."

### II. *Appellant's Constitutional Claim.*

■ Under the Supreme Court's holdings in *Morrissey v. Brewer,* 408 U.S. 471, 485–87, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and *Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 S.Ct. 1756, appellant had a due process right to a prompt preliminary hearing "at or reasonably near the place of the alleged . . . violation or arrest . . . to determine whether there [was] probable cause" to believe appellant had violated the conditions of his probation. 408 U.S. at 485, 92 S.Ct. at 2602. The record does not indicate that appellant received any such hear-

ing. He did not assert his right to this preliminary hearing, however, until he was brought before the district court in Vermont for the final probation revocation hearing.

■ One remedy for what was a clear violation of appellant's rights would be dismissal of the Government's petition for revocation of probation, which would lead to appellant's release from custody. *Cf. United States v. Reaugh, supra* (warrant quashed for failure to bring to final hearing "as speedily as possible"). Several parole violation cases have invoked the parallel remedy of quashing a parole violation warrant in situations in which parolees were granted either no hearing at all (*i. e.,* neither preliminary nor final) or hearings plainly inadequate under *Morrissey. United States ex rel. Hahn v. Revis, supra,* 520 F.2d at 638–39 (7th Cir. 1975); *United States ex rel. Carson v. Taylor,* 403 F.Supp. 747, 750–57 (S.D.N.Y.1975) (Frankel, J.); *Fitzgerald v. Sigler,* 372 F.Supp. 889, 897–98 (D.D.C.1974); *Jones v. Johnston,* 368 F.Supp. 571, 573–74 (D.D.C.1974). These parole cases are all distinguishable from the instant one, however, in that the appellant did receive an adequate *final* revocation hearing; he was denied only the required preliminary hearing.

There are apparently no cases dealing with a failure to grant only a preliminary hearing to a probationer or parolee plainly entitled to such a hearing,[4] and we therefore turn for guidance to the analogous area of preliminary hearings for suspects arrested without indictment. In *Gerstein v.*

---

**3.** Delays related to personnel are not weighed against the Government with the same force as deliberate delays or delays related to inexcusable inefficiency. We nevertheless caution that "the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Barker v. Wingo,* 407 U.S. 514, 531, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). Moreover, if personnel deficiencies are not remedied, so that delays such as the one here become the rule rather than the exception, personnel considerations may not longer be viewed as a neutral factor but will instead become a factor "weighted heavily against the government." *Id.*

**4.** In the one case to date involving failure to grant only a preliminary hearing, it was held that no preliminary hearing was necessary under *Morrissey,* since the probationer was incarcerated at the time of the revocation and thus was not deprived of his liberty. *United States v. Tucker,* 524 F.2d 77, 78 (5th Cir. 1975) (per curiam), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976). A loss of liberty was involved in the revocation in the instant case; it is undisputed that Companion had, under *Morrissey,* a right to a preliminary hearing.

*Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), the Supreme Court held that the Fourth Amendment requires a preliminary hearing to be held soon after arrest. This hearing, involving "a neutral determination of probable cause," *id.* at 114, 95 S.Ct. at 863, is similar to the preliminary hearing required by *Morrissey,* which also involves a determination of probable cause, 408 U.S. at 485, 92 S.Ct. 2593. In dictum, the *Gerstein* Court added an important qualification to its ruling, one directly relevant here:

> Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction. *Frisbie v. Collins,* 342 U.S. 519 [72 S.Ct. 509, 96 L.Ed. 541] (1952); *Ker v. Illinois,* 119 U.S. 436 [7 S.Ct. 225, 30 L.Ed. 421] (1886). Thus, as the Court of Appeals noted below, although a suspect who is presently detained may challenge the probable cause for that confinement, a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause. 483 F.2d [778], at 786–787.

420 U.S. at 119, 95 S.Ct. at 865. The rationale for this "established rule" was explained by our court in *Mayer v. Moeykens,* 494 F.2d 855, 859 (2d Cir.), *cert. denied,* 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974): a defendant's status after conviction is the result of that conviction, not the result of his pretrial detention; the court lacks power "to remedy, retrospectively, . . . denial of a 'fundamental' right which has no bearing on appellant's present incarceration"; the remedy of release from custody "is one to be sought prior to conviction." *Id.*

This rationale is directly applicable here. Appellant's present incarceration stems from a decision by Judge Holden made after a hearing that was adequate in all respects; the denial of appellant's preliminary hearing right no longer has any relation to his incarceration. *Cf. United States v. Cifarelli,* 401 F.2d 512, 513–14 (2d Cir.) (per curiam) (delay on appeal not prejudicial where no reversal), *cert. denied,* 393 U.S. 987, 89 S.Ct. 465, 21 L.Ed.2d 448 (1968). To order appellant's release from custody at this time would be to grant an extreme remedy for a deprivation from which appellant is no longer suffering. This remedy should have been sought at the time that the deprivation of rights was actually occurring.

In holding that appellant should not now be released for a deprivation of rights that occurred prior to his final hearing, we are aware that our decision has the unfortunate ring to it of affording "a right without a remedy." *United States ex rel. Hahn v. Revis, supra,* 520 F.2d at 639. If appellant had made his motion at the appropriate time, however, he would have had either the relief that he now seeks or the preliminary hearing to which he was entitled. Furthermore, appellant's civil remedies against those denying him his right may survive. *See Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). In any event, we caution that our decision does not give the Government license to ignore the preliminary hearing mandate of *Morrissey* and *Gagnon.* If a probationer's rights are flagrantly abused, or if preliminary hearings are repeatedly denied to probationers as a group, we reserve, of course, the authority, as a matter of our supervisory power, to order release from custody regardless of when the request is made. *See United States v. Lira,* 515 F.2d 68, 73 (2d Cir.) (concurring opinion), *cert. denied,* 423 U.S. 847, 96 S.Ct. 87, 46 L.Ed.2d 69 (1975).

Judgment affirmed.