UNITED STATES of America,
Plaintiff-Appellee,

v.

Gary Lee WICKHAM,
Defendant-Appellant.

No. 79–1101.

United States Court of Appeals,
Ninth Circuit.

Dec. 18, 1979.

Rehearing Denied March 19, 1980.

Terry Amdur, Pasadena, Cal., for defend-ant-appellant.

Anstruther Davidson, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff-appellee.

**1308**

Before BROWNING and GOODWIN, Circuit Judges, and JAMESON,[*] District Judge.

GOODWIN, Circuit Judge:

Claiming that he was denied a speedy revocation hearing and sentence under 18 U.S.C. § 4208(a)(2), Wickham appeals a judgment remanding him to custody for the duration of his original sentence.

He presents two principal issues: (1) the correctness of his revocation proceedings; and (2) the legality of the sentence imposed upon the revocation of his probation. Neither point justifies reversal.

Following his conviction upon a guilty plea, Wickham had been sentenced on January 27, 1975, to a term of ten years with parole at the discretion of the parole commission pursuant to 18 U.S.C. § 4208(a)(2).[1] This section of the code was then understood as making prisoners eligible for early parole.[2]

On March 28, 1975, in response to a Rule 35 motion, the sentencing court suspended the balance of all but six months of the ten-year sentence and placed Wickham on probation for five years. Whether by design or oversight, the (a)(2) provision was omitted from the amended order. Because the order provided for virtually immediate probation, Wickham did not complain of the omission of the (a)(2) reference, and indeed it is difficult to see that it had any place in the order.

During the probation period, on December 8, 1976, the court issued a warrant for Wickham's arrest for absconding from supervision in California. The F.B.I. eventually arrested Wickham in Idaho. In January of 1978, when Wickham was arrested, there was also outstanding against him an Idaho state warrant for forgery. The arresting agents took Wickham to an Idaho county jail. State officers there told him of the forgery charge, and booked him for forgery. The federal warrant was lodged as a detainer. He remained in state custody for almost six months.

On June 8, 1978, Wickham pleaded guilty to the Idaho forgery charge. He was then released into federal custody. After an identity hearing on June 16, Wickham was returned to the central district of California where a probation revocation hearing was commenced on July 31, 1978. On August 1, 1978, the Idaho forgery conviction was added as another ground for revoking his probation. On August 14, 1978, Wickham moved to dismiss the revocation proceedings on the ground that his right to a speedy revocation hearing had been violated. The motion was denied, and on August 15, 1978, the sentencing court ordered revocation of probation and the execution of the prior suspended sentence. This order, again, carried no mention of the (a)(2) provision.

Wickham maintains that the federal warrant was executed in January 1978 when he was arrested by federal agents for violating probation, even though the federal warrant was subsequently lodged as a detainer. He then argues that a revocation hearing seven months after his arrest does not comport with due process under *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), or with 18 U.S.C. § 3653, which requires that a probationer be taken before the court "[a]s speedily as possible after arrest * * *" for violating probation.

[*] The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. In 1976, this section was recodified substantially intact at 18 U.S.C. § 4205(b)(2).

2. In most cases, prisoners sentenced to a "straight" sentence under 18 U.S.C. § 4202 [now § 4205(a)] did not become eligible for parole until they had served one-third of their custodial term. A sentence containing a § 4208(a)(2) clause, on the other hand, made them eligible for parole "at such time as the board of parole [now "the Commission"] may determine." A third sentencing alternative is available: the sentencing court designates a specific minimum term not more than one-third the maximum sentence set by the court, at which point the prisoner will be eligible for parole. § 4208(a)(1) [now § 4205(b)(1)].

Both parties agree that execution of the federal warrant is the event from which time for a probation revocation hearing is calculated. They disagree about the effect of the events in this case. Wickham contends that because he was apprehended by federal agents acting pursuant to the federal warrant, he was effectively in federal custody from that time forward. He then argues that he was entitled to speedy processing of his probation revocation regardless of the legitimate demands of the state in which he faced charges for new crimes.

■ The government, on the other hand, ignores the effect of Wickham's January loss of liberty at the hands of federal agents acting on the federal warrant. Relying on *Moody v. Daggett*, 429 U.S. 78, 87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976), the government urges that, because Wickham's extended state custody in Idaho was caused solely by his new state charges, the *Gagnon* hearing requirements, predicated upon a probationer's loss of liberty due to a violation of a condition of supervised release, were not yet triggered. We agree, but not because the federal warrant was not "executed" when Wickham was arrested in Idaho.[3] It was executed. But Wickham's liability to answer state charges was of his own making, and the time he thus spent in Idaho is not properly chargeable to the federal government. Moreover, as we demonstrate below, Wickham suffered no preju-

dice from the delay in his revocation hearing while his Idaho problems were being resolved.

If Wickham's arrest had initially been made on the state forgery charge, with the federal warrant lodged as a detainer, the federal warrant would not then have been executed. Focusing upon substance rather than form, the real issue is not which warrant was "executed" first, but whether the federal government did anything to deny Wickham the due process requirements of *Gagnon v. Scarpelli*, 411 U.S. at 782, 93 S.Ct. 1756, as drawn from the parole revocation rules in *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

The Supreme Court in *Morrissey* has required that the revocation hearing "be tendered within a reasonable time after the parolee is taken into custody."[4] 408 U.S. at 488, 92 S.Ct. at 2604. However, only sterile formality would require that Wickham be taken to California for a speedy hearing in this case. While his probationary liberty was curtailed because of his arrest for violating probation, before another day had passed it was also curtailed because of state charges filed against him. Wickham's loss of liberty would have been the same whether his probation revocation hearing was held the day he was arrested or after the Idaho charges had been processed.[5] The

---

3. There are cases holding that a probation or parole violator warrant is not executed and *Morrissey-Gagnon* protections (*Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), dealing with the analogous parole context), are not triggered when the warrant is placed as a detainer at an institution where the probationer or parolee is already in custody awaiting disposal of an intervening charge or serving a sentence for a crime committed while on supervised release. *E. g., Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976); *Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir.), *cert. denied*, 429 U.S. 846, 95 S.Ct. 81, 42 L.Ed.2d 75 (1974); *United States v. Bartholdi*, 453 F.2d 1225 (9th Cir. 1972). These cases have no direct bearing here where two warrants were outstanding but the person named in them was at large.

4. Prior to the revocation of his probation, Wickham did not specifically attack the lack of a preliminary, informal, and immediate hearing on whether there was probable cause to believe he had violated the condition of probation which formed the basis of the warrant. (Discovery in Idaho of a person supposedly under supervision in California constituted probable cause to believe that he had absconded.) Even if Wickham had raised the failure to grant him a preliminary hearing, the point has no relation to his present incarceration which stems solely from the revocation decision. *United States v. Companion*, 545 F.2d 308, 312–13 (2d Cir. 1976).

5. There is nothing in the record from which to suppose that Wickham would have been released were it not for the federal detainer. *See Moody v. Daggett*, 429 U.S. 78, 87, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976).

mere fact that Wickham was caught first by federal rather than by state officers should have no functional effect in fixing the priority in which the state and federal matters ought to have been resolved. Because Wickham was arrested in Idaho, it made· sense to resolve the Idaho charges before bringing him back to California for a revocation hearing. There was no denial of due process. The avoidance of unnecessary travel is the preferred practice whether a revocation warrant is based on noncriminal delinquency or on intervening criminal conduct. *See United States v. Bartholdi,* 453 F.2d 1225 (9th Cir. 1972).

In his claim of unreasonable delay, Wickham emphasizes the fact that the alleged probation violation underlying the warrant was not his criminal conduct while on release, but violation of a noncriminal condition of probation. However, in *Johnson v. Chappell,* 117 U.S.App.D.C. 190, 327 F.2d 888 (D.C.Cir.1964), the court held that the parole board may use an intervening conviction as a basis for revoking parole despite the fact that neither the indictment nor conviction had formed the basis for the parole violator's warrant., Although the same circuit later held that it was also "not per se reasonable to defer determination of whether there has been a violation of parole pending the completion of the unrelated criminal proceedings," *Boswell v. United States Board of Parole,* 128 U.S.App.D.C. 311, 317, 388 F.2d 567, 573 (D.C.Cir.1967) [6],

nothing in the cases requires a federal court to delay a pending state prosecution in order to hold an early hearing on a federal probation violation.

Wickham's primary claim of prejudice [7] is this: Between the time of his arrest in Idaho and his revocation hearing in California, Wickham was convicted of a state felony. This conviction, he says, greatly increased the likelihood that a revocation would result in a substantial prison sentence. No doubt this is true, but we have found no case which recognizes this to be the type of prejudice on which to attack revocation proceedings. Ordinarily, to challenge a revocation proceeding, the delay must have been caused by government action that was not the result of the probationer's own criminal conduct. In addition, the delay must have prejudicially affected the probationer's ability to contest revocation. Prejudice might result from delays causing probationers difficulty in contesting the alleged facts constituting a violation of their release conditions; hardship in finding and presenting favorable witnesses; or inability to produce evidence of mitigating circumstances which might result in continued probation despite the violation. *See, e. g. United States v. Companion,* 545 F.2d 308, 312 (2d Cir. 1976); *Boswell v. United States,* 128 U.S.App.D.C. at 388 F.2d at 574; *Gaddy v. Michael,* 519 F.2d 669, 673 (4th Cir. 1975), *cert. denied,* 429 U.S. 998, 97

**6.** The question addressed in *Boswell* was whether the parole board could defer proceeding on a violator warrant filed as a detainer pending criminal proceedings and consequent service of sentence on an unrelated intervening charge which had not served as the basis for the violator warrant. *Moody* does not clearly answer this question affirmatively because in that case the intervening criminal conduct did constitute the charged violations. 429 U.S. at 80, 97 S.Ct. 274. The *Boswell* court said:

"* * * If the [Parole] Board intended to pursue the charge that the parole board's order had been violated by failure to report, there is at least an issue whether it was reasonable to delay this determination for two and a half years merely because the parolee was in confinement on an unrelated Dyer Act charge." 128 U.S.App.D.C. at 318, 388 F.2d at 573–74.

The court's analysis in *Boswell* applies whether the violator warrant was actually executed or simply lodged as a detainer.

**7.** Appellant does not claim prejudice from a lack of timely notice that his forgery conviction would be added as a ground for revocation. It is not clear in the present case if and when, prior to formal amendment of the charged probation violation which occurred nearly simultaneously with the revocation hearing itself, Wickham was notified that his Idaho forgery conviction would be added as a ground for revocation. However, he could hardly claim surprise upon learning that his conduct in Idaho would be considered relevant when the sentencing court reviewed his behavior on probation. Indeed, he wrote to the district court in Pocatello, Idaho, on April 24, 1978: "I am also aware that a new criminal charge cannot be charged as a violation except upon conviction."

S.Ct. 524, 50 L.Ed.2d 608 (1976). In Wickham's case the delay caused none of these things.

Wickham had every opportunity to challenge the charged forgery violation in the Idaho proceedings and to present mitigating evidence, if any existed, in the probation hearing on the issue of revocation. His argument of prejudice ultimately rests on his misconception that his noncriminal conduct in absconding fixed the limits of charges that could be considered as violations of probation. In fact, federal probation officers could have used his Idaho forgery conduct as a probation violation, and could have undertaken to prove that violation by substantial evidence without waiting for his actual state-court conviction for forgery. *United States v. Rilliet*, 595 F.2d 1138 (9th Cir. 1979). Such a procedure would have been a waste of public funds, but if the federal authorities had so proceeded, Wickham's position would have been no better than it is now. Indeed, as it turned out, it was Wickham's choice not to force the State of Idaho to prove the intervening criminal conduct in criminal proceedings with the whole panoply of procedural guarantees available therein.

In sum, the seven month period between Wickham's arrest for violating probation and his revocation hearing was not an unreasonable delay under the circumstances presented here. And, even if by some curious line of reasoning the delay could be said to have been unreasonable, the delay in this case was not prejudicial.

█ In addition to the foregoing arguments, Wickham has several others. First, he alleges a denial of his statutory right to a hearing "as speedily as possible". 18 U.S.C. § 3653. Balancing the length of the delay he suffered, for which there is no limit that is unreasonable per se, against the factors identified in *United States v. Companion*, 545 F.2d at 311, as Wickham suggests we do, we conclude that the reason for the delay was ultimately sensible: to allow resolution of the Idaho charges while he was physically present in that state.

█ Wickham next complains about the modification made to his sentence on his Rule 35 motion in 1975. His original ten-year sentence was imposed, as noted, under the provision making him eligible for early parole, 18 U.S.C. § 4208(a)(2). When the judge, at Wickham's request, suspended all but six months of his sentence (plus probation for five years), the (a)(2) provision became redundant and was deleted. Now that his probation has been revoked and the ten-year prison term ordered executed, he argues that the deletion of the (a)(2) provision increased his sentence in violation of the Double Jeopardy Clause.

Wickham relies on two cases in support of this contention. Both held that the parole board must give an (a)(2) prisoner meaningful parole consideration prior to or at the expiration of one third of the prisoner's sentence. *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974); *Grasso v. Norton*, 520 F.2d 27 (2d Cir. 1975).

However, since the time of the sentences challenged in those cases, the parole commission has been operating under new guidelines. They were initially issued in 1973 (currently codified at 28 C.F.R. § 2.20), and purport to replace subjective determinations with objective ones. *Edwards v. United States*, 574 F.2d 937, 942 (8th Cir.), cert. denied, 439 U.S. 1040, 99 S.Ct. 643, 58 L.Ed.2d 700 (1978). These guidelines, which base likely parole dates primarily on "salient factors" (rehabilitative potential based on certain personal attributes) and severity of the offense, can be used to predict when 88 percent to 94 percent of all prisoners will in fact be released. *United States v. Solly*, 559 F.2d 230, 232 (3d Cir. 1977); *Edwards v. United States*, 574 F.2d at 943; *Rifai v. United States Parole Commission*, 586 F.2d 695, 698 n.4 (9th Cir. 1978). The criteria used in setting the targeted release period for a particular individual under the new guidelines include little if any information that sentencing judges do not already have at the time of sentencing.[8] Thus, sentenc-

---

8. "The time ranges specified by the guidelines are established specifically for cases with good

institutional adjustment and program progress." 28 C.F.R. § 2.20(b). Thus, institu-

ing judges now know, as the judge at the time of Wickham's sentencing would have known, given the widespread publicity the guidelines received in the criminal justice system, that the designation of a sentence under the (a)(2) provision would no longer, if it ever did, have any real effect on a prisoner's ultimate release date. Indeed, this circuit recently affirmed the exercise of the parole commission's discretion to postpone an (a)(2) prisoner's parole hearing until the prisoner has served a third of the sentence, even though that date was beyond the guideline-predicted time for release on parole. *O'Brien v. Putnam*, 591 F.2d 53 (9th Cir. 1979).[9] The postponement there was based on the severity of the offense. Whether the commission would be statutorily obliged to consider an (a)(2) prisoner for parole by the one-third point, so as not to nullify the difference between (a)(2) and straight sentences, did not have to be considered. But in *Petrone v. Kaslow*, 603 F.2d 779 (9th Cir. 1979), we held that a prisoner sentenced under the early parole-eligibility provision could not attack by a habeas corpus writ the parole commission's continuance of meaningful review for parole to a point beyond one-third of his sentence. We said:

"Under the Parole Commission and Reorganization Act, the scheduling of parole hearings in '(b)(2) cases is now defined by statute, 18 U.S.C. §§ 4208(a) and (h).' Under this statutory scheme, both (b)(2) prisoners and those with statutory minimum periods of incarceration receive the same treatment in being considered for parole. Accordingly, Petrone's reliance upon *Grasso v. Norton*, 520 F.2d 27 (2d Cir. 1975) and *Garafola v. Benson*, 505 F.2d 1212 (7th Cir. 1974), antedating the new statute, is misplaced." 603 F.2d at 780.

Although the question before the Supreme Court in *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), was different from the one here, the Court in that case addressed the comparative roles the sentencing court and the parole commission play in a prisoner's ultimate release on parole. The Court's comments are thus relevant here:

"The decision as to when a lawfully sentenced defendant shall actually be released has been committed by Congress * * * to the discretion of the Parole Commission. Whether wisely or not, Congress has decided that the Commission is in the best position to determine when release is appropriate, and in doing so, to moderate the disparities in the sentencing practices of individual judges. The authority of sentencing judges to select precise release dates is, by contrast, narrowly limited: the judge may select an early parole eligibility date, but that guarantees only that the defendant will be considered at that time by the Parole Commission. * * * *" (Footnotes omitted.) 442 U.S. at 188, 99 S.Ct. at 2242.

The Court's dictum about guaranteed consideration did not become a holding in *Petrone v. Kaslow, supra*, where we remained consistent with the overall emphasis in *United States v. Addonizio* that the parole decision remains firmly in the hands of the Commission. As the Court noted:

"The import of this statutory scheme is clear: the judge has no enforcible expectations with respect to the actual release of a sentenced defendant short of his statutory term. The judge may well have expectations as to when release is likely. But the actual decision is not his to make, either at the time of sentencing or later if his expectations are not met.

---

tional adjustment recently has been a factor only when it is poor, leading to release later than that projected.

As a result of recommendations that some incentive for good institutional behavior be restored to the guidelines, effective November 1, 1979, the commission may reduce custodial time upon a finding of "superior program

achievement." See 44 Federal Register No. 186, pp. 55002, 55003.

**9.** *See also, Izsak v. Sigler*, 604 F.2d 1205 (9th Cir. 1979), holding that, in making its decision, the parole commission could properly weigh the severity of the crime even though the court sentenced the appellant in 1976 under the early parole eligibility provision.

To require the Parole Commission to act in accordance with judicial expectations, and to use collateral attack as a mechanism for ensuring that these expectations are carried out, would substantially undermine the congressional decision to entrust release determinations to the Commission and not the courts." 442 U.S. at 190, 99 S.Ct. at 2242, 2243.

It can hardly be maintained, then, that Wickham's amended sentence was heavier than his original, given the little-if-any difference an (a)(2) designation now has for prisoners sentenced since 1973.[10]

■ Wickham's final argument is a far-fetched attack on his modified sentence. Relying on *United States v. Ellenbogen*, 390 F.2d 537 (2d Cir.), *cert. denied*, 393 U.S. 918, 89 S.Ct. 241, 21 L.Ed.2d 206 (1968), he contends that the district court could not legally modify his prison sentence to probation after he had begun serving the custodial term, and, therefore, the modified sentence, being illegal, must be void. This assertion is frivolous. *Ellenbogen* was concerned with the district court's lack of jurisdiction to change a sentence to probation while the conviction was being appealed. The probation order there was void because it was issued by a court without power to act. Here, there is no question that the court had jurisdiction to modify appellant's sentence on the Rule 35 motion. This difference makes all the difference.

Even if the probation order constituted a defective sentence because it was not entered before Wickham started to serve his original sentence (18 U.S.C. § 3651), but instead upon a timely Rule 35 motion,[11] it was not void. *United States v. Kenyon*, 519 F.2d 1229, 1231–33 (9th Cir.), *cert. denied*, 423 U.S. 935, 96 S.Ct. 293, 46 L.Ed.2d 267 (1975). This court held in *Kenyon* that if the defect benefited the defendant, as it clearly did here, the defendant cannot be heard to complain. In such a case, the sentence is fully effective unless and until set aside by the court. *See also, United States v. Lancer*, 508 F.2d 719, 726 (3d Cir.), *cert. denied*, 421 U.S. 989, 95 S.Ct. 1992, 44 L.Ed.2d 478 (1975).

Affirmed.

---

10. *Compare Geraghty v. United States Parole Commission*, 579 F.2d 238, 265–67 (3d Cir. 1978), *cert. granted*, 440 U.S. 945, 99 S.Ct. 1420, 59 L.Ed.2d 632 (1979) (neither the Congress nor the commission could retroactively decrease parole eligibility of prisoners sentenced *prior* to new statutes or administrative guidelines without offending the Ex Post Facto Clause of the Constitution).

11. After August 1, 1979, the action taken in this case would have conformed to amended Rule 35(b): "Changing a sentence from a sentence of incarceration to a grant of probation shall constitute a permissible reduction of sentence under this subdivision." *See also United States v. Golphin*, 362 F.Supp. 698 (W.D.Pa. 1973), holding that a court can, on a timely Rule 35 motion, legally put on probation a defendant who has already begun serving a custodial sentence.