J-S01026-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DASHAWN L. JAMISON | : | |
| | : | |
| Appellant | : | No. 259 MDA 2020 |

Appeal from the Judgment of Sentence Entered January 11, 2017
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004396-2006

BEFORE:   LAZARUS, J., McCAFFERY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED: JULY 12, 2021**

Dashawn L. Jamison (Appellant) appeals *nunc pro tunc* from the judgment of sentence entered in the York County Court of Common Pleas following the revocation of his probation imposed following his guilty plea to intimidation of a witness.[1]   Appellant argues the trial court erred by:  (1) revoking his probation for offenses he committed while still imprisoned, in contradiction to statements the court made at his original sentencing; (2) revoking his probation without first conducting a ***Gagnon I***[2] hearing; and (3) imposing a manifestly excessive sentence for a technical violation.  We affirm.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. § 4952(a).

[2] ***See Gagnon v. Scarpelli***, 411 U.S. 778 (1973).

The relevant facts underlying this appeal are as follows. In November of 2005, Appellant, who was only 15 years old at the time,[3] was involved in a high-speed car chase with police, which ended after he struck another vehicle, killing the driver, and fled the scene. *See* N.T., 7/3/06, at 4; N.T., 9/28/06, at 5-6. As a result of this incident, he was charged as an adult at trial court docket number CP-67-CR-0002177-2006 (2177-2006) with, *inter alia*, third-degree murder, aggravated assault, and homicide by vehicle.[4] N.T., 7/3/06, at 2. On March 28, 2006, Appellant was being escorted from the district justice's office when he made threatening comments to the Commonwealth's witness. *See id.* at 4. Thereafter, Appellant was charged as a juvenile with terroristic threats, harassment, and intimidation of a witness.[5] Following a hearing, those charges were transferred to adult court, at the instant trial court docket number CP-67-CR-004396-2006 (4396-2006). *See* Order, 7/3/06, at 12.

On September 28, 2006, pursuant to an agreement with the Commonwealth, Appellant entered a guilty plea in both cases before the Honorable John S. Kennedy. He pled guilty to one count each of aggravated assault and failure to yield at a stop sign[6] at Docket No. 2177-2006, and one

---

[3] Appellant was born in May of 1990.

[4] *See* 18 Pa.C.S. §§ 2502(c), 2702(a)(1); 75 Pa.C.S. § 3732(a).

[5] *See* 18 Pa.C.S. §§ 2706(a)(1), 2709(a)(1), (4), 4952(a)(5), (6).

[6] 75 Pa.C.S. § 3323.

count of intimidation of a witness at Docket No. 4396-2006. The negotiated plea agreement included a sentence of 5 1/2 to 11 years' imprisonment for aggravated assault, and a consecutive term of eight years' probation for intimidation of a witness.[7] *See* N.T., 9/28/06, at 1-2. Relevant to this appeal, during the plea hearing, the trial court made the following statement: "[Defense counsel], I assume you explained to your client that the eight-year probationary sentence, although it's a probationary sentence, if he violates during that time period, he could be sentenced to a term greater than eight years?" *Id.* at 2. Appellant's counsel replied, "Yes, Your Honor." *Id.*

On November 1, 2006, the trial court sentenced Appellant, in accordance with the plea agreement, to an aggregate term of 5 1/2 to 11 years' imprisonment followed by a consecutive term of eight years' probation. A panel of this Court, in a prior memorandum, summarized the ensuing procedural history as follows:

> After serving most of his 11 year sentence for assault, [Appellant] refused to sign the paperwork required to begin probation or to provide certain contact information in his home plan. Because [Appellant] would have maxed-out his prison sentence the following week, the trial court issued a bench warrant to detain him and to address compliance with his special probation.[8]

---

[7] No penalty was imposed for the summary traffic offense.

[8] *See* Order Issuing Bench Warrant, 11/23/16 (noting that Appellant "is expected to max out his sentence on November 29, 2016[,]" and is "refusing to sign paperwork necessary to begin his Special Probation [or] provide the

*(Footnote Continued Next Page)*

On December 6, 2016, the [trial] court . . . held a hearing on its bench warrant. There, [Appellant] admitted to refusing to sign the paperwork; he believed that the max dates were incorrect. He denied not supplying the contact information. Two weeks later, the Board of Probation and Parole filed a notice of charges and hearing report;[9] the trial court scheduled a probation violation hearing for January 11, 2017.

[Appellant] retained private counsel for that hearing. The Commonwealth provided the court with nine write-ups on [Appellant] from the prison, which were the basis of his probation violation, along with his refusal to complete and sign the home plan. [Appellant's] counsel stipulated to the write-ups. Thus, the court found [Appellant] in violation of his probation, revoked his probation, and re-sentenced him to 7[ ]1/2 to 15 years on January 11th. The court apprised him of his right to file a post-sentence motion and his right to an attorney. [Appellant's] attorney also advised him — it turns out incorrectly — of his appellate rights.

A week later, [counsel] filed a post-sentence motion on [Appellant's] behalf asking the trial court to reconsider the sentence. [On January 23, 2017, Appellant filed a *pro se* post-sentence motion, asserting, *inter alia*, that he never received a **_Gagnon I_** hearing. **_See_** Appellant's Post Sentence Motion, 1/23/17, at 1.] The trial court ordered a hearing on the post-sentence motion, scheduled for March 15, 2017.

At the March 15th hearing, [Appellant] insisted upon representing himself. The court ultimately ruled "we are going to deny [Appellant's] request for a reconsideration of sentence; and the sentence we previously imposed will stay intact." The judge next misinformed [Appellant] that his appellate rights were reinstated and would last 30 days.

[Appellant] filed a *pro se* notice of appeal on April 18, 2017.

---

[Probation] Board . . . with a phone number and address of residence to complete his home plan").

9 That report, which is not included in the certified record but is attached to Appellant's brief, charged Appellant with committing 10 violations of his special probation between May 2009 and July 2015, while he was incarcerated on the aggravated assault charge. **_See_** Notice of Charges & Hearing, 12/19/16, at 1-2 (unpaginated).

*Commonwealth v. Jamison*, 686 MDA 2017 (unpub. memo. at 1-3) (Pa. Super. May 21, 2018). This Court quashed Appellant's appeal as untimely filed. *Id.* at 4 (explaining the filing of a motion to modify sentence filed after a probation revocation does not toll 30-day appeal period).

On January 8, 2018, Appellant's case was reassigned to the Honorable Michael E. Bortner, after Judge Kennedy retired. On September 4, 2018, Appellant filed a *pro se* petition for relief pursuant to the Post Conviction Relief Act (PCRA). *See* 42 Pa.C.S. §§ 9541-9546. Present counsel, Aaron Holt, Esquire, was appointed on October 29, 2019, and filed an amended petition two months later.[10] On January 29, 2020, the PCRA court granted Appellant relief by restoring his direct appeal rights *nunc pro tunc*. *See* Order, 1/29/20. This timely appeal followed.[11]

Appellant presents the following three issues on appeal:

I. Did the [trial court] err when it revoked [Appellant's] probation for offenses committed while in prison, when [Appellant] was not informed that as part of his plea deal, that in addition to his 5 and 1/2 to 11 year sentence that his probation could be revoked based on actions that occurred during his prison term extending the probationary portion of his sentence, and contradicting the statement of the judge during his plea sentencing that he would face an eight-year

---

[10] Prior to Attorney Holt's appointment, Appellant was represented by two different attorneys, each of whom also filed an amended PCRA petition.

[11] On March 2, 2020, Appellant filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). He filed an amended Rule 1925(b) statement on June 20, 2020, after seeking permission from the trial court.

term of probation after the end of his prison term, thereby violating what [Appellant] believed were the terms of his plea deal?

II. Did the [trial court] err when it held a revocation hearing when a *Gagnon I* hearing had not be held[?]

III. Did the [trial court] err when it sentenced [Appellant] to 7-1/2 to 15 years on a technical violation which was manifestly excessive given his age at the time of his original plea and sentencing, and the fact that he had not received a lenient sentence on his original charges?

Appellant's Brief at 6.

In his first issue, Appellant argues the trial court erred in revoking his probation based upon his misconduct in prison before he began serving his term of probation. Appellant's Brief at 15. He contends that, in doing so, the trial court violated the terms of his plea deal. *Id.*

Our review of probation revocation proceedings is guided by the following:

When considering an appeal from a sentence imposed following the revocation of probation, "[o]ur review is limited to determining the validity of the probation revocation proceedings and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." "Revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion."

\* \* \*

A defendant's probation may be revoked upon proof that the defendant either: 1) violated a specific condition of his or her probation or 2) committed a new crime. 42 Pa.C.S.A. § 9771; *Commonwealth v. Foster*, 214 A.3d 1240, 1243 (Pa. 2019). These are the only grounds on which a court can find that a defendant violated his or her probation. "[T]he VOP court must find, based on the preponderance of the evidence, that the

- 6 -

probationer violated a specific condition of probation or committed a new crime to be found in violation."

Notably, "a violation of probation does not occur solely because a judge believes the probationer's conduct indicates that probation has been ineffective to rehabilitate or to deter against antisocial conduct." "Rather, the effectiveness of probation as a rehabilitative tool and as a deterrent to antisocial conduct is the lens through which a violation is to be viewed." "Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity."

Once the court concludes a violation occurred and probation was not effective, the court may resentence the defendant to a total term of incarceration if: (1) the defendant was convicted of a new crime; (2) the defendant's conduct makes it likely that he or she will commit a new crime if not incarcerated; or (3) incarceration "is essential to vindicate the authority of the court." 42 Pa.C.S.A. § 9771(c); *Foster*, 214 A.3d at 1251.

*Commonwealth v. Giliam*, 233 A.3d 863, 866–67 (Pa. Super. 2020) (some citations omitted).

Here, Appellant insists the court revoked his probation based, at least in part, upon misconducts he received while imprisoned for the aggravated assault conviction. Appellant's Brief at 15. While he recognizes case law permits revocation of a term of probation based upon acts committed before the probationary period begins,[12] Appellant maintains that, in his case, the

_____

[12] *See Commonwealth v. Ware*, 737 A.2d 251 (Pa. Super. 1999). In *Ware*, a panel of this Court held the trial court properly revoked the appellant's probation based upon a new offense she committed while she was still on parole, before she began serving her probationary term. *Id.* at 253. The Court opined: "The fact that appellant had not commenced serving probation when the new offense occurred did not prevent the court from revoking its prior order placing appellant on probation." *Id.* We note, however, the
*(Footnote Continued Next Page)*

- 7 -

terms of his plea prohibited the court from doing so. *Id.* at 16. He points to the court's comment at his guilty plea hearing that if Appellant "violates during that time period" — meaning his eight-year probationary sentence — he could be resentenced to a term of imprisonment. *See id.* at 17-18; N.T., 9/28/06, at 2. Appellant insists that based on the court's statement, he had a reasonable belief that he could "not face resentencing for actions that occurred **before** the commencement of his term of probation[.]" Appellant's Brief at 18 (emphasis added). Furthermore, to the extent the Commonwealth argues it never agreed to this term, Appellant emphasizes that "the Commonwealth did not object or otherwise attempt to correct [the trial court's] legally erroneous statement." *Id.* at 19. Thus, he contends, he had "a reasonable basis for believing that [it was] part of his plea deal[.]" *Id.* at 20.

The Commonwealth addresses Appellant's claim through the lens of the plea agreement. It insists "there was no specific representation within the plea agreement itself that called for modifying [Appellant's] probationary terms in the way alleged by [him]." Commonwealth's Brief at 15. Rather, the Commonwealth maintains the trial court's "passing remark" did not constitute "a modification of [Appellant's] probationary sentence [that] was 'integral to his decision to plea[d guilty].'" *Id.* at 19.

---

continued vitality of **Ware** is an issue before this Court *en banc* in **Commonwealth v. Simmons**, 2461 EDA 2018, and **Commonwealth v. Reavis**, 1360 EDA 2018.

- 8 -

Appellant's argument focuses on the numerous misconducts he received in prison, while incarcerated for the aggravated assault conviction. He acknowledges, however, that that the court also found him in violation of the terms of his probation for refusing to sign paperwork or provide a residence prior to leaving prison. *See* Appellant's Brief at 23-24. Thus, the preliminary question before us is whether the trial court determined Appellant violated the terms of his probation based solely on his refusal to sign paperwork or provide a residential address, or whether the court also found a violation based on Appellant's prison misconducts. Upon our review of the record, we conclude the trial court revoked Appellant's probation based **solely** on Appellant's refusal to sign the necessary paperwork or provide a residence — and considered his prison misconducts for sentencing purposes only.

We reiterated that on November 23, 2016, just three days before Appellant would have completed serving his entire 11-year sentence, the trial court issued a bench warrant, based on information from Probation and Parole that Appellant was "refusing to sign paperwork necessary to begin his Special Probation and failing to provide the Board . . . with a phone number and address of residence to complete his home plan[.]" Order Issuing Bench Warrant, 11/23/16. The court conducted a hearing on December 6, 2016. At that time, the court noted the Commonwealth "was taking the position that [Appellant] was in violation for all the misconducts he had while he was in state prison, as well as his refusal to sign the conditions that were applying to his probation." N.T., 12/6/16, at 4-5. Accordingly, the trial court vacated the

bench warrant, but directed Appellant remain detained "until the [probation] violation report can be filed[.]" ***Id.*** at 7. A violation report was later submitted to the trial court, although it is not part of the certified record. This report, as reproduced in Appellant's brief, alleged Appellant violated the terms of his probation based on 10 specific incidents that occurred during his period of incarceration. ***See*** Notice of Charges and Hearing, at 1-2.

At the probation revocation hearing conducted on January 11, 2017, the Commonwealth noted, at the outset, that Appellant "refuse[d] to sign his special probation paperwork, and he was violated[.]" ***See*** N.T., 1/11/17, at 2 (Appellant's counsel noting "[t]he basis of the initial violation was that [Appellant] had failed to sign his special probation paperwork"). Nevertheless, the parties continued to discuss the numerous misconducts Appellant received while in prison. At the conclusion of the hearing, the court found Appellant violated the terms of his probation, and sentenced him to a term of 7 1/2 to 15 years' incarceration. ***Id.*** at 11.

Appellant filed both a counseled and *pro se* post-sentence motion, and was permitted to represent himself at the subsequent hearing. ***See*** N.T., 3/15/17, at 11-16. In one argument, he asserted he was prejudiced by the delay in revoking his probation based on prison misconducts that occurred years earlier. ***See id.*** at 16-17. At that time, the trial court interjected:

> I don't mean to interrupt you, sir. But the actual reason that you were brought back here and the actual reason for your violation was the fact that you had refused to sign the release conditions at the prison.

- 10 -

* * *

> And when I sentenced you, I did look at what your prison adjustment was. So those matters were relevant to your sentencing, but they weren't necessarily relevant to your violation. . . .

*Id.* at 17-18. The trial court reiterated this sentiment at the conclusion of the hearing:

> Our concern is that given what [Appellant's] prison adjustment was, the number of violent offenses that occurred during prison which we didn't necessarily take that into consideration as to whether or not he violated his probationary sentence.
>
> But we did believe that his prison adjustment was a relevant consideration as to what his new sentence should be.

*Id.* at 39.

Subsequently, in its August 29, 2017, opinion filed in response to Appellant's (later quashed) direct appeal, the trial court stated, in clear terms, that the underlying basis for its decision to revoke Appellant's probation was Appellant's refusal to complete the necessary paperwork, and that it considered Appellant's prison misconducts only for sentencing purposes. The court opined:

> In the instant case, Appellant refused to complete his home plan that was necessary to be completed prior to his beginning to serve his probationary sentence. Without an address for Appellant's whereabouts, Appellant cannot be properly supervised. Appellant was made aware on at least two occasions, that he must complete the home plan and sign the paperwork to begin his probation. While Appellant claims that he did provide an address and only failed to sign the paperwork because of incorrect maximum dates, this Court had a hard time finding Appellant credible. Appellant has a history of failure to comply with the rules while incarcerated and [the probation officer] testified that Appellant refused to sign the paperwork. This Court

- 11 -

found Appellant's refusal to be a direct violation of his probation. Furthermore, Appellant's poor prison adjustment, pattern for violence, repeated threats to staff, and a blatant refusal to comply with the rules clearly demonstrate that Appellant is not ready to be released into the community on probation.

Trial Ct. Op., 8/29/17, at 17-18.

Thus, because the record demonstrates the trial court did not revoke Appellant's probation based upon prison misconducts committed **before** he began serving his probationary term, Appellant's claim fails. Furthermore, we note that Appellant conceded he did not sign the requisite paperwork, although he offered several excuses for his failure to do so. *See* N.T., 1/11/17, at 2-3. Accordingly, Appellant is entitled to no relief on his first claim.

Next, Appellant argues the trial court erred when it revoked his probation without first conducting a *Gagnon I* hearing. Appellant's Brief at 24. He insists he is entitled to two separate hearings under the law, and the court's failure to conduct both hearings resulted in a violation of his due process rights. *Id.* at 25, 28.

"When a parolee or probationer is detained pending a revocation hearing, due process requires a determination at a pre-revocation hearing, a *Gagnon I* hearing, that probable cause exists to believe that a violation has been committed." *Commonwealth v. Ferguson*, 761 A.2d 613, 617 (Pa. Super. 2000) (citation and emphasis omitted). If, following that hearing, the trial court finds probable cause, "a second, more comprehensive hearing, a

***Gagnon II*** hearing, is required before a final revocation decision can be made." ***Id.*** (citation omitted). This Court has explained:

> "At the preliminary [***Gagnon I*** ] hearing, a probationer or parolee is entitled to notice of the alleged violations of probation or parole, an opportunity to appear and to present evidence in his own behalf, a conditional right to confront adverse witnesses, an independent decisionmaker, and a written report of the hearing." Thus, the ***Gagnon I*** hearing is similar to the preliminary hearing afforded all offenders before a Common Pleas Court trial: the Commonwealth must show probable cause that the violation was committed.

***Commonwealth v. Davis***, 336 A.2d 616, 621 (Pa. Super. 1975) (citations omitted).

Accordingly, analogous to claims regarding defects in a preliminary hearing preceding a criminal trial, an objection to the trial court's failure to conduct a ***Gagnon I*** hearing must be raised by a defendant **before** his probation is revoked, or risk waiver. In ***Commonwealth v. Perry***, 385 A.2d 518 (Pa. Super. 1978), this Court explained:

> If before his parole or probation is revoked a parolee or probationer has not complained of the lack of a ***Gagnon I*** hearing, he has already suffered the harm that the omission allegedly caused; since the substance of the revocation proceeding is not affected by the omission, the parolee or probationer will not be heard to complain later.

> This is analogous to the rule that objections to defects in a preliminary hearing (e. g., lack of counsel) or to the denial of a preliminary hearing must be raised by a motion to quash the indictment; otherwise, all such procedural and "non-jurisdictional" defects are waived.

> The United States Court of Appeals for the Second Circuit drew this same analogy in ***United States v. Companion***, 545 F.2d 308 (2d Cir. 1976):

- 13 -

(A) defendant's status after conviction is the result of that conviction, not the result of his pretrial detention; the court lacks power "to remedy, retrospectively, . . . denial of a 'fundamental right' which has no bearing on appellant's present incarceration"; the remedy of release from custody "is one to be sought prior to conviction."

This rationale is directly applicable (in a probation revocation case). Appellant's present incarceration stems from a decision by (the revoking court) made after a hearing that was adequate in all respects; the denial of appellant's preliminary hearing right no longer has any relation to his incarceration. . . . To order appellant's release from custody at this time would be to grant an extreme remedy for a deprivation from which appellant is no longer suffering. This remedy should have been sought at the time that the deprivation of rights was actually occurring.

*Id.* at 520 (some citations omitted).

Here, Appellant did not object to the trial court's alleged failure to hold a **Gagnon I** hearing until he filed a *pro se* post-sentence motion in January of 2017 — **after** the trial court revoked his probation and resentenced him. Thus, his present objection is waived. **See Perry**, 385 A.2d at 520.

In his final claim, Appellant challenges the discretionary aspects of his probation revocation sentence. Specifically, he asserts the sentence imposed by the trial court was excessive considering "his age at the time he was sentenced and the fact that his original sentence could not be considered lenient." Appellant's Brief at 30.

Like any challenge to the discretionary aspects of sentencing, "[a]n appellant wishing to appeal the discretionary aspects of a probation-revocation sentence has no absolute right to do so but, rather, must petition this Court for permission to do so." **Commonwealth v. Kalichak**, 943 A.2d

285, 289 (Pa. Super. 2008). In order to invoke this Court's jurisdiction, the appellant must establish that:

> (1) the appeal was timely filed; (2) the challenge was properly preserved by objecting during the revocation sentencing or in a post-sentence motion; (3) his or her brief includes a concise statement of the reasons relied upon for allowance of appeal of the discretionary aspects of the sentence pursuant to Pa.R.A.P. 2119(f); and (4) the concise statement raises a substantial question that the sentence is inappropriate under the Sentencing Code.

***Commonwealth v. Starr***, 234 A.3d 755, 759 (Pa. Super. 2020) (citations omitted), *appeal denied*, 243 A.3d 724 (Pa. 2020).

Here, Appellant properly preserved his challenge to the discretionary aspects of his probation revocation sentence in a timely filed post-sentence motion, preceding his *nunc pro tunc* appeal. ***See*** Appellant's Post Sentence Motion for Reconsideration of Sentence, 1/19/17, at 2 (unpaginated). Furthermore, he has included the requisite Rule 2119(f) statement in his brief. Thus, we proceed to determine whether Appellant has raised a substantial question that the sentence imposed is inappropriate under the Sentencing Code. ***See Starr***, 234 A.3d at 759.

Appellant maintains the trial court's imposition of a sentence of 7 1/2 to 15 years' imprisonment for a technical violation of his probation is excessive, particularly, since he avers, the court did not consider his age at the time he committed the offense (15 years old), or the fact that his original sentence was not lenient. Appellant's Brief at 13. This Court has held: "An argument that the trial court imposed an excessive sentence to technical probation

violations raises a substantial question." ***Commonwealth v. Schutzues***, 54 A.3d 86, 98 (Pa. Super. 2012). Accordingly, Appellant has properly invoked our jurisdiction to consider his claim on appeal.

We review a probation revocation sentence under the same standard as any sentence imposed by the trial court, that is, for an abuse of discretion. ***See Schutzues***, 54 A.3d at 98.

> Sentencing is a matter vested within the discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. An abuse of discretion requires the trial court to have acted with manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. . . .

***Id.*** (citation omitted).

Upon the revocation of probation, a trial court may impose any sentence that was available at the time of the initial sentencing. ***See*** 42 Pa.C.S. § 9771(b). The only limitation on the court's sentencing authority following revocation is set forth at 42 Pa.C.S. § 9771(c). That provision precludes a trial court from imposing a sentence of total confinement unless the court finds: "(1) the defendant has been convicted of another crime; or (2) the conduct of the defendant indicates that it is likely he will commit another crime if he is not imprisoned; or (3) such a sentence is essential to vindicate the authority of the court." 42 Pa.C.S. § 9771(c)(1)-(3).

Here, Appellant insists the trial court failed to account for the fact that he was only 15 when he committed the offense, and that his original sentence was, as the court acknowledged, "very tough." Appellant's Brief at 31, *citing*

N.T., 1/11/17, at 9. However, a review of the revocation proceedings conducted on January 11, 2017, reveals the trial court **did** consider these facts before imposing the revocation sentence.

Although the court commented that Appellant's sentence for aggravated assault was "very tough," it noted the sentence was imposed pursuant to a global plea agreement, which Appellant accepted. N.T., 1/11/17, at 9. Furthermore, the court explained that, had there been no agreement, it "would have been justified in sentencing [Appellant] in the aggravated range because of the dangerous nature of the charges[.]" *Id.* Indeed, Appellant fails to acknowledge that as part of the plea agreement, the Commonwealth dismissed charges of third-degree murder and vehicular homicide.[13] Moreover, the sentence imposed on the present offense — eight years' probation for intimidation of a witness — was below the mitigated range of the guidelines. *See* N.T., 9/28/06, at 2 (Commonwealth explaining the sentence for intimidation charge was "below the mitigated range," but was agreed-upon as part of global plea in both cases).

_____

[13] In fact, at the original sentencing hearing, the trial court commented:

> We see it as a major break that [Appellant] gets from the plea agreement in that the third-degree murder charge gets dismissed. It is a plea agreement that will permit him to change his life, if he chooses to do so. We hope he will do that.

N.T., 11/1/06, at 7.

Moreover, the trial court stated that the revocation sentence of 7 1/2 to 15 years' imprisonment was "necessary for the protection of society given Appellant's original offenses and [his] institutional adjustment." Trial Ct. Op., 8/29/17, at 20. The court opined:

> Appellant had 11 years of incarceration to demonstrate that his actions would make him a reasonable person in society and totally blew that chance. The [c]ourt had grave concerns for the York community and the risk Appellant would pose out on the streets. Throughout Appellant's 11 years of incarceration, Appellant demonstrated a pattern of violence, threatening behavior, and a complete disregard for the rules. Most strikingly, Appellant showed defiance and a lack of remorse for his actions that appeared to be even worse than when Appellant was initially incarcerated.

*Id.* at 20-21. The trial court's consideration of Appellant's prison misconducts was proper, and we conclude the court's comments satisfy the requirements of Section 9771(c)(2). *See* 42 Pa.C.S. § 9771(c)(2) ("The court shall not impose a sentence of total confinement upon revocation unless it finds that . . . the conduct of the defendant indicates that it is likely that he will commit another crime if he is not imprisoned[.]"). Accordingly, Appellant is entitled to no relief on his final claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/12/2021