**UNITED STATES of America**

v.

**Alfred Henry MANUSZAK, a/k/a "Sassy Doc", et al.,**

**Appeal of Charles IANNECE.**

**No. 75–1294.**

United States Court of Appeals, Third Circuit.

Argued Sept. 17, 1975.

Decided Jan. 16, 1976.

Robert E. J. Curran, U. S. Atty., Eastern District of Pennsylvania, Donald F. Manno, Sp. Atty., Philadelphia Strike Force, Sidney M. Glazer, Richard S. Stolker, Attys., Dept. of Justice, Washington, D. C., for appellee.

Joel Harvey Slomsky, Joseph C. Santaguida, Philadelphia, Pa., for appellant Charles Iannece.

Before SEITZ, Chief Judge, and ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

The appellant, having been acquitted of certain gambling charges in a state proceeding, asserts that the district court could not revoke his federal probation on the basis of uncontradicted evidence of his gambling activities. We hold that the district court did not abuse its discretion in revoking Iannece's probation and therefore affirm.

### I.

On January 29, 1974 appellant, Charles Iannece, pleaded guilty in the United States District Court for the Eastern District of Pennsylvania to Count I of a two-count indictment, which charged him with conspiring to conduct an illegal gambling business in violation of 18 U.S.C. § 371.[1] At the time of the entry of his plea, the imposition

1. The second count of the indictment was dismissed.

of a prison sentence was suspended and Iannece was placed on probation for one year and fined $1,000. Among the terms of probation set by the court was that Iannece "shall refrain from any unlawful conduct."

Iannece, however, did not completely sever his gambling ties. On October 23, 1974 a search of the residence where Iannece's mother lived was conducted by the Philadelphia police pursuant to a search warrant. Iannece, who was present, was arrested at the conclusion of the search. During the search, the police found gambling tally sheets on Iannece's person as well as rice paper containing lists of horse bets and numbers concealed under his mother's mattress.

In early November, 1974, a federally authorized wiretap revealed that a number of telephone conversations transmitting betting information had been made to the telephone located at Iannece's residence. Government agents identified one of the conversants as Iannece.

In December, 1974 after obtaining a warrant, F.B.I. agents searched Iannece's residence. During the search Iannece informed the agents that they were too late as the Philadelphia police had just recently "hit his operations" at his mother's house.

Iannece was subsequently charged and tried by the Commonwealth of Pennsylvania for violating Pennsylvania gambling laws. During that trial, which resulted in Iannece's acquittal, Philadelphia Police Officer Reid testified about the documents he had seized during the October 23, 1974 search at the mother's residence.

On January 23, 1975 the United States filed a petition to revoke Iannece's federal probation. The petition charged Iannece had violated the conditions of his probation by:

    a.  conducting an illegal gambling business in Philadelphia, Pennsylvania, during the term of his probation;

    b.  accepting wagers from other individuals during the term of his probation;

    c.  transmitting wagers during telephone calls with John Melilli on November 11 through 18, 1974;

    d.  receiving numbers betting information during telephone calls with John Melilli on November 11 through 19, 1974.

An evidentiary hearing was held by the district court on February 13, 1975. At that hearing, in addition to receiving testimony from Officer Reid, wiretap and expert evidence was also introduced to the following effect. In November, 1974 a wire interception of one Nancy Melilli's telephone was authorized, and tape recorded conversations and transcripts of these conversations were placed in evidence. During the period of surveillance commencing November 11, 1974, some 50 telephone calls were made from the Melilli telephone to the address where Iannece resided.[2] F.B.I. agents identified the voices of Iannece and John Melilli. They interpreted the tape conversations as conversations involving betting, including the acceptance and transmission of wagers and the receipt of numbers betting information.

Iannece produced no evidence but argued only that he had been acquitted of state gambling charges by the Commonwealth. He also argued that if an individual "is not prosecuted or if he is exonerated by the City Courts, then the Court, during the probation really has no basis for saying that he did in fact violate his probation."

At the conclusion of the hearing, the district court, after making numerous findings of fact and conclusions of law, held that Iannece had violated the terms of his probation by conducting an illegal gambling business, by accepting and transmitting wagers, and by receiving betting information all in violation of the Penal Laws of Pennsylvania. Thereafter on March 4, 1975, Iannece

---

**2.**  At the probation revocation hearing expert government witnesses testified that approximately $10,000–$40,000 per day was grossed in the gambling operations transacted over the telephone.

**314**

was sentenced to four years imprisonment.[3] This appeal followed.

## II.

At the outset of our discussion we think it necessary to emphasize those issues which we are not called upon to decide on this appeal. First and most important, despite the appellant's surface contentions, we are not faced here with a situation where the appellant's federal probation was revoked based wholly upon the same evidence and the same issues which resulted in his acquittal at state criminal proceedings. *See, e. g., Standlee v. Rhay,* 403 F.Supp. 1247 (E.D. Wash.1975) (Parole revocation); *cf. United States v. Chambers,* 429 F.2d 410 (3d Cir. 1970); *United States v. Markovich,* 348 F.2d 238 (2d Cir. 1965). Nor are we faced with the due process challenges of *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Rather, the arguments made to us are substantially less compelling.

First, Iannece argues that the record is devoid of the necessary evidence to support the district court's holding that he was conducting an illegal gambling business which violated his condition of probation.

Alternatively he argues that ". . . the notion of collateral estoppel barred the lower court from hearing the testimony of [Police] Officer Robert Reid" (Appellant Br. p. 16) because Reid had testified against him in the State prosecution in which Iannece had been acquitted. His argument in this regard concludes with the contention that ". . . since the facts testified to and issues raised in appellant's state gam-

bling trial were resolved in his favor by an acquittal, it was error for the lower court to consider the same evidence again at the revocation hearing of February 13, 1975." (Appellant's Br. p. 20).

For the reasons which are specified hereafter, we find both of these arguments to be without merit.

## III.

Treating Iannece's arguments in reverse order we first analyze his collateral estoppel contention. That doctrine was defined in *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970) to mean ". . . that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future law suit." *Ashe* also teaches that:

> Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration."

397 U.S. at 444, 90 S.Ct. at 1194.

Even without consideration of other substantive barriers precluding collateral estoppel in the present setting,[4] it is clearly evident that based on this record Iannece has not established any basis to apply that principle here.

---

3. The court's order of March 4, 1975 further provided for parole eligibility after one year and eligibility for a work release after six months, and a fine of $1,000.

4. We note initially that at the revocation proceeding no objection was made to the admission of Reid's testimony. Additionally, the government argues that collateral estoppel is not available where dual sovereignties (state-federal) are involved, *Abbate v. United States,* 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729

(1959), and points out that the United States had not been a party to the state criminal prosecution. Because of our holding that the gross insufficiency of this record would under any circumstance bar resort to collateral estoppel, we do not find it necessary to discuss or express any views as to the merits of these subsidiary issues, each of which the government contends would, by itself, require us to reject the appellant's collateral estoppel argument.

The record here is virtually bare insofar as it reflects the essentials of the state proceeding. It does not even identify the particular crime or crimes with which Iannece was charged by the Commonwealth of Pennsylvania. While it does reflect that Police Officer Reid had testified in the state criminal proceeding as well as at the federal revocation hearing, it does not reveal the particulars or content of Officer Reid's testimony in the state proceeding. Moreover, the record is completely silent as to any other testimony or evidence produced at that proceeding. In fact, had it not been for Reid's testimony at the revocation hearing that Iannece had been arrested by the state authorities and had been acquitted, we would have no evidence or knowledge whatsoever of any state criminal proceeding brought against Iannece.[5] It was therefore impossible for the district court, just as it is impossible for us, to ascertain with precision how, and on what evidence, the particular state issues were determined. *Ashe v. Swenson, supra;* cf. *United States v. McKim*, 509 F.2d 769, 775–776 (5th Cir. 1974).

■ Hence, even assuming that all other preconditions to the application of collateral estoppel had been met (*see* n.4 *supra*), Iannece completely failed to sustain his burden of: (1) providing the court with an appropriate record of the state proceedings, and (2) demonstrating that the same issues and the same evidence were presented at both proceedings, and (3) establishing that a rational state jury could not have grounded its verdict of acquittal upon an issue or evidence other than that which he now seeks to foreclose. *Ashe v. Swenson, supra. United States v. Feinberg*, 383 F.2d 60, 71 (2d Cir. 1967), cert. denied, 389 U.S. 1044, 88 S.Ct. 788, 19 L.Ed.2d 836 (1968). It is evident, therefore, that the district court made no error in accepting and considering Reid's testimony.

■ However, even had the district court not considered Reid's testimony, the uncontradicted evidence independent of his testimony was overwhelming and fully supported the district court's findings. Government agents had identified Iannece's voice in discussions concerning bets and betting information. Other FBI agents interpreted the tapes and transcripts which were in evidence, and concluded that Iannece was involved in a gambling business grossing in excess of ten thousand dollars each day.[6] As indicated, this evidence alone more than sufficed to sustain the district court's findings.

In sum, we conclude that the district court was not collaterally estopped from considering Reid's testimony, and that the findings of Iannece's gambling conduct including his receipt and transmission of wagers, were amply supported by the evidence, with or without consideration of the challenged testimony.

\* \* \* \* \* \*

Q. And as a matter of fact, Mr. Iannece was arrested as a result of these particular items that were confiscated; isn't that correct?
A. That is correct.
Q. And he was acquitted; isn't that correct?
A. That is correct.

5. Although Reid testified in some detail at the *revocation* hearing, the only reference to the testimony which he had previously given at the *state* proceeding was as follows:
Q. Now the piece of paper that you found in his sock; you testified under oath in this matter once before in the State Courts in Philadelphia; is that correct?
A. That is correct.
Q. And I believe you were asked by me whether or not that could be tally for other activity other than gambling activity and your answer was "Yes"; isn't that correct?
A. I believe you asked if this could be horse loan money or sports bets and—
Q. Or other activities?
A. Right.
Q. And your answer was "Yes"; isn't that correct?

6. It is significant that Special Agent Rohr, stipulated by the parties to be an expert in the field of gambling, testified that the appellant was not merely a bettor but that he participated at "the very highest level in the hierarchy of a numbers gambling business . . . in the City of Philadelphia."

**316**

## IV.

What we have indicated thus far in discussing the appellant's collateral estoppel argument is relevant as well to Iannece's companion argument claiming that the record is devoid of evidence to support his probation revocation. He argues that for the district court to revoke his probation, it had to do so based on evidence that he had committed an unlawful act, either federal or state. The district court erred he claims, because the record contains no such evidence.

■ First, he contends that by employing in its findings the words "illegal gambling business", the district court was specifically referring to a violation of 18 U.S.C. § 1955 which uses and defines these same words. His argument proceeds that inasmuch as the various elements of *that* statute were not proved by the government, a violation of § 1955 could not be established and charged against him.[7] In particular, Iannece points out that in order to come within the ambit of § 1955 the government, among other requirements, must prove that five or more individuals participated in the violation of state law, and here, at the most, the government has shown participation of but two individuals, John Melilli and the appellant. Thus, he concludes, since evidence as to the essential elements of § 1955 was not introduced at the probation revocation hearing, it was clearly erroneous[8] for the district court to find that he had conducted an "illegal gambling business."

The flaw in appellant's argument is that he has misread the district court's findings and conclusions. Nowhere in the district court's remarks made at the conclusion of the February 23, 1975 hearing is there any reference, direct or indirect, to 18 U.S.C. § 1955, its definitions or elements. To the contrary, the district court's remarks are completely generic in content when describing Iannece's conduct:

> I conclude that the calls referred to . . . show that the defendant was conducting an illegal gambling business in Philadelphia, Pennsylvania during the term of his probation . . . that he was accepting wagers from other individuals . . . that he was transmitting wagers . . . that he was receiving betting information . . . [and that] . . . this conduct on the part of Charles Iannece violated the penal laws of Pennsylvania.[9]

■ Just as we find no merit to this argument, there is no merit to Iannece's remaining claim. Iannece contends that the government having failed to prove a violation of a *federal* gambling statute was obliged to show that a *state* gambling law had been violated if it was to succeed in having Iannece's probation revoked. He then asserts that since Pennsylvania excludes wiretap evidence at its proceedings,[10] the district court was also precluded from considering wiretap evidence in arriving at its conclusion that Iannece was involved in an illegal gambling business.

---

7. 18 U.S.C. § 1955 defines an "illegal gambling business" as one which (1) violates state law, (2) involves five or more persons, and (3) must remain in continuous operation for thirty days or have a gross revenue of $2,000 in any single day. *See, generally, United States v. Pepe*, 512 F.2d 1129 (3d Cir. 1975).

8. It is not essential to our decision whether or not the "finding" of "illegal gambling business" made by the district court is to be regarded as a finding of fact to be tested by the clearly erroneous standard of *United States v. Delerme*, 457 F.2d 156, 160 (3d Cir. 1972). Tested by even the most liberal standard, the district court did not err in its findings or conclusions.

9. 18 C.P.S.A. § 5512 declares unlawful lotteries or numbers games to be common nuisances

and makes the setting up or maintenance of any unlawful lottery or numbers game punishable as a misdemeanor in the first degree. 18 C.P.S.A. § 5513 makes punishable as a misdemeanor in the first degree the knowing permission given by an owner, tenant, lessee or occupant of premises to use the premises for the purpose of unlawful gambling. 18 C.P.S.A. § 5514 makes punishable as a misdemeanor in the first degree the receiving, recording, or registering of wagers or bets, or being the owner, lessee or occupant of premises used for such purposes. A misdemeanor in the first degree is punishable by not more than five years' imprisonment. 18 C.P.S.A. § 1104.

10. 18 C.P.S.A. §§ 5701–5705.

There are three answers to this argument. First, the record at the revocation hearing does not reveal that Iannece raised this argument before the district court. Second, even had there been such an objection, in the context of Pennsylvania law, we have held in *United States v. Armocida*, 515 F.2d 49, 51–52 (3d Cir. 1975) that:

So long as the information was lawfully obtained under federal law and met federal standards of reasonableness, it is admissible in federal court despite a violation of state [Pennsylvania] law.

 Finally, to revoke probation it is not necessary that the probationer be adjudged guilty of a crime, but only that the court be reasonably satisfied that he has violated one of the conditions of his probation. It is conceded by the appellant that the revocation of probation rests in the sound discretion of the district court, and reversal is not warranted absent an abuse of that discretion. *United States v. D'Amato*, 429 F.2d 1284 (3d Cir. 1970). As this court stated in *United States v. Chambers, supra*, 429 F.2d at 411: ". . . ordinarily, probation may be revoked on the basis of conduct which falls short of criminal conduct . . . ." This Circuit is not alone in holding "reasonable satisfaction" to be the test for revoking probation. Virtually every other circuit has also so held. *United States v. Nagelberg*, 413 F.2d 708 (2d Cir. 1969), *cert. denied*, 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970); *United States v. Markovich*, 348 F.2d 238 (2d Cir. 1965); *United States v. Cates*, 402 F.2d 473 (4th Cir. 1968); *United States v. Bryant*, 431 F.2d 425 (5th Cir. 1970); *United States v. Lauchli*, 427 F.2d 258 (7th Cir.), *cert. denied*, 400 U.S. 868, 91 S.Ct. 111, 27 L.Ed.2d 108 (1970); *United States v. Strada*, 503 F.2d 1081 (8th Cir. 1974); *United States v. Carrion*, 457 F.2d 808 (9th Cir. 1973); *Yates v. United States*, 308 F.2d 737 (10th Cir. 1962).

In *United States v. Garza*, 484 F.2d 88 (5th Cir. 1973) it was argued that an element of the offense for which probation was revoked was not proved beyond a reasonable doubt. The Fifth Circuit rejected this argument and wrote:

. . . Revocation of probation does not require proof sufficient to sustain a criminal conviction. All that is required is enough evidence, within a sound judicial discretion, to satisfy the district judge that the conduct of the probationer has not met the conditions of probation.

. . . .

484 F.2d at 89. The most recent pronouncement of this Court is found in *Skipworth v. United States*, 508 F.2d 598, 602 (3d Cir. 1975), where we said:

In revocation proceedings, the trial judge must reasonably satisfy himself that the probationer has broken some law while on probation or has otherwise violated a condition of his probation. . . .

Although the district court in its findings and conclusions did not identify any specific Pennsylvania penal law which Iannece violated, its findings that Iannece received and transmitted wagers and gambling information make it abundantly clear that it considered the relevant Pennsylvania gambling statutes,[11] and was satisfied that Iannece had not refrained from unlawful conduct during the term of his probation.

### V.

Having concluded that the district court did not abuse its discretion and that its findings and conclusions are amply supported by the evidence, we will affirm the March 4, 1975 order of the district court which revoked appellant's probation.

---

11. *See* n.9 *supra*, and in particular 18 C.P.S.A. § 5512(b)(1) (maintaining a numbers game) and § 5514(2) (occupying premises to receive or register wagers).