**UNITED STATES of America**

v.

**Francis Harry BROWN a/k/a Harry Brown.**

**Crim. No. 72–519.**

United States District Court, E. D. Pennsylvania.

Aug. 11, 1978.

50

Robert E. Madden, Philadelphia Strike Force, Philadelphia, Pa., for plaintiff.

Donald I. Bierman, Miami, Fla., Ronald F. Kidd, Philadelphia, Pa., for defendant.

OPINION

DITTER, District Judge.

Defendant Francis Harry Brown was adjudged guilty of conspiracy to distribute stolen postal money orders, 18 U.S.C. § 371, on April 10, 1973. This court sentenced him to pay a fine of $1,000 and placed him on probation for a period of two years until April 10, 1975. By the instant petition, the government seeks an order revoking that probation on the ground that the defendant violated its terms by engaging in criminal conduct. After reviewing the briefs and arguments of counsel, I have concluded that the government is correct in its assertion, and I find that Mr. Brown has indeed violated his probation.

■ I note at the outset that the revocation of probation is a matter which rests squarely within the discretion of the district court. *Burns v. United States*, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932); *United States v. D'Amato*, 429 F.2d 1284 (3d Cir. 1970). Moreover, to order revocation, the court need only "be reasonably satisfied that [the probationer] has violated one of the conditions of his probation." *United States v. Manuszak*, 532 F.2d 311 (3d Cir. 1976).

The government's charge here arises from the defendant's conviction of extortion, mail fraud, and conspiracy on June 16, 1977, after a jury trial before the Honorable Alfred L. Luongo of this district. It is conceded by the prosecution that discovery of this conduct, as well as the conviction, occurred after the probationary period had expired. The government points out, however, that under 18 U.S.C. § 3653, a warrant for the arrest of a probation violator may issue anytime within the five year maximum probationary period permitted by 18 U.S.C. § 3651, so long as the violation itself occurred during the actual period set by the sentencing court. See *United States v. Sanchez*, 138 F.Supp. 143 (S.D.Tex.1956).

The defendant does not dispute this general rule. Rather, he raises three arguments in support of his position that a probation revocation would be improper. First, Brown contends that the government was guilty of prejudicial delay in filing its revocation petition. Second, he asserts that all the conduct alleged to be violative of his probation occurred either before the probationary period began or after it ended. Finally, it is suggested that I should dismiss the instant petition because the fact of Brown's probation was brought to Judge Luongo's attention and considered by him in sentencing the defendant following the June 16, 1977, conviction.

I. *Prejudicial Delay*

■ The defendant asserts that government prosecutors and investigators were aware of the conduct allegedly constituting a probation violation as much as 17 months prior to the filing of the revocation petition.[1] It is claimed that this delay prejudiced Brown in that he was not able to defend against the charges at or about the time that the criminal conduct allegedly occurred, and that it subverted the purpose of probation, which is to supervise the defendant and encourage lawful activity on his part.

It should be noted first that defendant has already been found guilty of the underlying crimes charged in the government's petition. No delay in bringing the present revocation proceedings, however extended, could affect the central issue before me— that is, whether or not the defendant was on probation when he committed the criminal acts proven by his conviction.

In any event, I am not persuaded by the defendant's arguments regarding his constitutional rights. Brown relies heavily on *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). He correctly cites this case for the proposition that *pre-indictment* delay by the government may violate due process, and that the statute of limitations does not fully define the right of a defendant to be speedily accused. I have no quarrel with this principle, but it does not aid the probationer here. Defend-

1. The petition was filed on November 25, 1977.

ants in *Marion* were indicted on April 20, 1970, for crimes occurring between May 15, 1965, and February 6, 1967. The district court dismissed the indictment on the ground of prejudicial delay, but the Supreme Court reversed. The Court noted that the sixth amendment is inapplicable until the defendant has been formally charged. As to pre-arrest and pre-indictment delay, the Court expressly reaffirmed the principle that " 'the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges.' " 404 U.S. at 322, 92 S.Ct. at 464, quoting *United States v. Ewell*, 383 U.S. 116, 122, 86 S.Ct. 773, 777, 15 L.Ed.2d 627 (1966).

It is true that the *Marion* holding went beyond the statute of limitations. The Court stated that in some circumstances, due process would require dismissal of an indictment even though the applicable limitation period had not yet expired. Such a case, however, would require a showing of substantial prejudice to the accused *and* proof that the prosecution had intentionally delayed in order to gain a tactical advantage. 404 U.S. at 324, 92 S.Ct. at 465.

A similar holding was announced in *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). There, an 18 month delay was found insufficient to warrant dismissal of the indictment, despite the fact that two material defense witnesses had died in the interim. The Court noted that a showing of prejudice is not enough. Rather, the second element of the *Marion* text, i. e., a prosecution motive to gain a tactical advantage, must also be shown. 431 U.S. at 787–89, 97 S.Ct. at 2048–49.

These cases make it clear that the delay in the instant case did not violate Brown's right to due process. The defendant has failed to demonstrate, or even adequately allege, that the government wilfully delayed the institution of these proceedings in order to gain an advantage.[2] More importantly, Mr. Brown has made no showing that he was prejudiced by the government's actions. His vague protest that he was unable to defend against the charges at or about the time that the criminal conduct allegedly occurred amounts to no more than the general allegation of prejudice inherent in any delay which was found insufficient in *Marion, supra*.[3]

Another point raised by the government here bears mention. *Marion* and *Lovasco* are concerned with pre-arrest and pre-indictment delay. The instant case, by contrast, presents a petition for revocation of probation. That this distinction is noteworthy was made clear in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). *Morrissey* held that a parole revocation proceeding is not a part of the criminal prosecution and thus it is not attended by the "full panoply of rights" due a defendant in a criminal trial. 408 U.S. at 480, 92 S.Ct. at 2600. *Gagnon* extended this holding to probation revocation. 411 U.S. at 782, 93 S.Ct. at 1759–60. It is certainly arguable therefore that a prosecution delay sufficient to warrant dismissal of an indictment might not require refusal of a petition to revoke probation. This, of course, is a question I need not decide in the instant case.

---

**2.** Admittedly, the government has offered no satisfactory explanation of its delay in filing the instant petition. It is difficult to see what advantage the prosecution might have sought to gain here other than that of completing its investigation, a purpose specifically endorsed by the Supreme Court in *United States v. Lovasco*, supra, 431 U.S. at 789–95, 97 S.Ct. at 2049–52. The defendant, for his part, has not specifically charged that the government harbored any improper motives. In any event, as there has been no showing of prejudice, the reasons underlying the delay are not important. On the other hand, if actual prejudice had been shown in this case, *Lovasco* would mandate an inquiry beyond the record now before me. 431 U.S. at 789, 97 S.Ct. at 2049.

**3.** Appellees rely solely on the real possibility of prejudice inherent in any extended delay: that memories will dim, witnesses become inaccessible, and evidence be lost. In light of the applicable statute of limitations, however, these possibilities are not in themselves enough to demonstrate that appellees cannot receive a fair trial and to therefore justify the dismissal of the indictment.

404 U.S. at 325–26, 92 S.Ct. at 466.

## II. Occurrence of Acts Within Probationary Period

■ Mr. Brown's second assertion is that all the conduct alleged in the government's petition occurred outside the period of probation, which ran from April 10, 1973, until April 10, 1975.

I agree with the defendant as to his conviction for the crime of extortion. The indictment charged that on or about January 29, 1973, Brown used extortionate means to collect an extension of credit from one Russell Wilmerton. The last overt act charged occurred during the first week of March, 1973. It seems clear, therefore, that this crime was completed prior to the imposition of probation in April of 1973.

■ A different result obtains, however, as to the charges of mail fraud. The defendant was convicted of executing schemes to defraud one Herbert Bernstein, the Allstate Finance Company, and the Ford Motor Credit Company. The Bernstein incident involved the defendant's fraudulent sale of an ownership interest in the Chestnut Hill Lincoln-Mercury automobile dealership. It is apparently undisputed that the victim, Bernstein, paid money in consideration for the sale at a time within the defendant's probationary period, and the indictment charged that Brown devised the scheme between August of 1974, and April 30, 1975. The defendant argues, however, that Bernstein "did not feel he was defrauded" until after the events of April 16, 1975, which included the staging of a false robbery at the dealership by the defendant and others. Thus, it is contended that the crime did not occur until after the end of the probationary period.

This is indeed a novel theory, and one that I find entirely unpersuasive. While the victim may not have discovered the crime until after the end of the period in question, most of the overt acts identified in the indictment as furthering the scheme occurred well within the time of Brown's probation.

■ Similarly, the indictment places the scheme to defraud the Allstate Finance Company within the period of probation. It is charged that the scheme was devised between February 7, 1975, and April 18, 1975. An overt act in furtherance of the scheme was identified as having occurred on March 6, 1975, more than one month before the end of probation.

■ Even if I were to resolve any doubts about these two charges in defendant's favor, the result would not aid Mr. Brown in light of the third charge. This concerns the defendant's conviction of defrauding the Ford Motor Credit Company by staging a robbery at the Chestnut Hill Lincoln-Mercury dealership on April 16, 1975. As part of this elaborate scheme, the defendant had to arrange floor-plan financing of numerous automobiles, and he sent a mailing for this purpose April 10, 1975, the last day of his probation. It was this act that was said to constitute mail fraud. In his instructions to the jury, Judge Luongo explained that in order to convict they had to find a scheme to defraud already in existence at the time the mailing was sent. "[Y]ou will have to decide whether that scheme had been concocted prior to April 10, 1975." Tr. 1751. Brown's conviction following that instruction is more than enough for me to be "reasonably satisfied" that he engaged in unlawful conduct during his probationary period and thus violated one of the conditions of his probation. See *United States v. Manuszak*, supra.

## III. Conclusion

■ Defendant's final argument need not detain us long. Brown suggests, without supporting authority, that I should dismiss the instant petition because the fact of his probation was brought to Judge Luongo's attention at sentencing on the underlying indictment. I note once again, however, that this is a matter addressed to my discretion, *Burns v. United States*, supra; *United States v. D'Amato*, supra. The fact that another judge was aware of defendant's prior convictions and may have considered them in sentencing does not persuade me that I should exercise my discretion in favor of refusing the revocation petition.

I find therefore that the defendant, Francis Harry Brown, has violated a condition of his probation, and the government's petition to revoke that probation must therefore be granted.