**UNITED STATES of America, Appellant,**

v.

**Salvador Charles BASSO, Defendant–Appellee.**

**No. 1224, Docket 79–1464.**

United States Court of Appeals, Second Circuit.

Argued May 14, 1980.

Decided Sept. 23, 1980.

Carolyn L. Gaines, Atty., Dept. of Justice, Washington, D. C. (Richard Blumenthal, U. S. Atty., D. Conn., New Haven, Conn., Sidney M. Glazer, Atty., Dept. of Justice, Washington, D. C., of counsel), for appellant.

J. Daniel Sagarin, Milford, Conn. (William B. Barnes, Harrigan, Hurwitz, Sagarin & Rutkin, Milford, Conn., of counsel), for defendant–appellee.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

The Government appeals from an order of the District Court for the District of Connecticut entered by Judge Ellen Bree Burns quashing an arrest warrant for violation of probation issued against appellee Salvador Basso under the authority of 18 U.S.C. § 3653.[1] For the reasons stated below we reverse.

Basso was indicted by the grand jury for tax evasion, and on November 22, 1976, he pleaded *nolo contendere* to one count alleging such evasion in 1969. Thereafter, on January 14, 1977, Judge Zampano of the District of Connecticut sentenced Basso to a three–year term, execution of which was suspended, with Basso placed on two years probation and fined $4,000. Basso subsequently paid the fine in full.

Basso was initially assigned to Probation Officer Joseph Gagne, who informed him of the conditions of his probation. Condition 2 required that "You shall associate only with law–abiding persons. . . ." Officer Gagne explained this condition to Basso in detail, advising him that he could not associate with persons who had a criminal record, were engaged in ongoing criminal activity, or were on probation or parole.

On November 28, 1978, Officer Gagne was transferred to another probation district and Officer David Pond took over supervision of Basso's probation. After examining Basso's file, Officer Pond spoke to State Trooper Robert Blair, an undercover policeman investigating a so–called "Pizza Village" drug conspiracy, who had written a report on January 30, 1978, describing a meeting attended by Basso and several convicted criminals and alleged members of the Pizza Village conspiracy. Trooper Blair stated that Basso had called the meeting, which took place at the Pin–Up Restaurant in Bridgeport, Connecticut, to mediate a dispute over certain gambling interests. One week later, Officer Pond met with Basso, and on the following day, December 13, 1978, he petitioned Judge Zampano for a warrant for Basso's arrest for violating probation.

Officer Pond's petition for an arrest warrant, which was made on Probation Form No. 12, stated in pertinent part:

"Comes now David W. Pond PROBATION OFFICER OF THE COURT presenting an official report upon the conduct and attitude of probationer Salvador Charles Basso. . . .

---

1. 18 U.S.C. § 3653 provides in relevant part as follows:

"At any time within the probation period, the probation officer may for cause arrest the probationer whenever found, without a warrant. At any time within the probation period, or within the maximum probation period permitted by section 3651 of this title, the court for the district in which the probationer is being supervised or if he is no longer under supervision, the court for the district in which he was last under supervision, may issue a warrant for his arrest for violation of probation occurring during the probation period. Such warrant may be executed in any district by the probation officer or the United States marshal of the district in which the warrant was issued or of any district in which the probationer is found. If the probationer shall be arrested in any district other than that in which he was last supervised, he shall be returned to the district in which the warrant was issued, unless jurisdiction over him is transferred as above provided to the district in which he is found, and in that case he shall be detained pending further proceedings in such district.

"As speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him. Thereupon the court may revoke the probation and require him to serve the sentence imposed, or any lesser sentence, and, if imposition of sentence was suspended, may impose any sentence which might originally have been imposed."

"RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

On October 21, 1977, at the Pin–Up Restaurant/Lounge, Fairfield Avenue, Bridgeport, Connecticut, probationer Basso is alleged to have met with Ilario 'Lefty' Regina, William Herman Dorman and Arnold Francis Russo, all of whom have criminal records, all in violation of Condition No. 2 of the Conditions of Probation, which states that, 'you´ shall associate only with law–abiding persons' . . . ."

"PRAYING THAT THE COURT WILL ORDER a Warrant to issue, said Warrant to serve as a temporary mittimus pending arraignment."

Officer Pond supported Form No. 12 with a two–page memorandum prepared by him, which detailed what Trooper Blair had told him and concluded that Basso was "viewed by law enforcement authorities as a well insulated and low key Mafia figure . . . ."

Judge Zampano did not immediately issue the warrant but suggested that Officer Pond speak with Assistant U. S. Attorney James Pickerstein, who was familiar with the Pizza Village investigation. On December 18 Attorney Pickerstein accompanied the probation officers to Judge Zampano's chambers, and spoke in support of the sufficiency of the allegations. Judge Zampano then signed the warrant.

Basso appeared voluntarily before a magistrate in response to the warrant, and was released on his own recognizance. He then filed several motions, including a motion to dismiss the petition for revocation of probation and to quash the arrest warrant for violating probation on the ground that it was unsupported by probable cause. At a February 22, 1979, hearing before Judge Zampano on the motion to dismiss, Judge Zampano referred to the two–page memorandum supporting Officer Pond's application on Form No. 12. Basso's attorney ad-

vised that he had no knowledge of the memorandum, which had not been made part of the court file. Judge Zampano had placed the memorandum under seal because it contained confidential information about undercover activity, stating that it could be unsealed by either court order or consent of the Government (the document remained sealed until March 5, 1979, when the Government consented to unseal it). Judge Zampano then transferred the case to Judge Burns in the interest of "the appearance of impartiality," since he had signed the warrant under attack. On November 2, 1979, Judge Burns issued a 41–page Memorandum of Decision quashing the arrest warrant.

Judge Burns found no constitutional infirmity in Probation Condition No. 2's requirement that Basso "associate only with the law–abiding persons." She also stated that "the United States Probation Office, and Officer Pond, did not abuse their discretion or act arbitrarily in prosecuting the charge against Basso, and that there was probable cause to believe Basso had violated Condition No. 2." However, she held that Basso's due process and Fourth Amendment rights had been violated by the warrant for his arrest. In her view the sufficiency of Officer Pond's application must be determined upon his Form No. 12 petition, without regard to the two–page memorandum supporting it, because the contents of the memorandum were not disclosed to the petitioner and were not within the Form No. 12. She also appears to have acted on the ground that the warrant application was insufficiently supported by oath or affirmation. Finally, after observing that "some factual basis for the arrest warrant was necessary for the issuing judge to determine the existence of probable cause,"[2] she held that the petition on Form No. 12 failed to contain the requisite factual basis and quashed the warrant.

---

**2.** Judge Burns recognized that arrest warrants for violations of probation need not conform exactly to the rigorous standards of probable cause required in criminal arrest warrants, noting that "[t]he strict standards of *Aguilar* [*v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d

723 (1964)] and *Spinelli* [*v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969)], with respect to informants, may be lessened in this circumstance." Memorandum of Decision at 24.

The United States appeals from the order quashing the arrest warrant.

## DISCUSSION

The procedural stance of this case is somewhat uncertain. Although Basso's motion to quash the arrest warrant was granted, the district court took no formal action with respect to his motion to dismiss all probation revocation proceedings against him. Absent a dismissal, the Probation Office can issue an order to show cause why Basso's probation should not be revoked, thereby compelling his appearance without use of a warrant; in the alternative it can issue a new warrant for Basso's arrest, support by a formal oath or affirmation and alleging sufficient facts to establish probable cause under the warrant. Judge Burns acknowledged that sufficient information exists to establish probable cause that Basso violated the conditions of his probation. She quashed the warrant only because she thought the application for it failed to allege those facts properly.

The Government has not pursued these courses,[3] apparently because it believes that the Memorandum of Decision below was intended to dismiss the probation revocation proceedings with prejudice to any further proceedings based on Basso's alleged meeting with nonlaw–abiding persons at the Pin–Up Restaurant on October 21, 1977.

■ A dismissal would clearly be erroneous. "[A]n illegal arrest, without more, ha[s] never been viewed as a bar to subsequent prosecution, nor as a defense." *United States v. Crews*, 445 U.S. 463, 474, 100 S.Ct. 1244, 1281, 63 L.Ed.2d 537 (March 25, 1980). Accord, *Gerstein v. Pugh*, 420 U.S. 103, 119, 95 S.Ct. 854, 866, 43 L.Ed.2d 54 (1975); *Frisbie v. Collins*, 342 U.S. 519, 522, 72 S.Ct. 509, 511, 96 L.Ed. 541 (1952); *Ker v. Illinois*, 119 U.S. 436, 441, 7 S.Ct. 225, 228, 30 L.Ed. 421 (1886). The Supreme Court in *Crews* was unanimous on this point, see 445 U.S. at 447, 100 S.Ct. at 1253. (Powell, J., concurring); *id.* (White, J., concurring). Though evidence obtained as a direct result of an unlawful arrest is sometimes suppressed, see *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); but cf. *United States v. Frederickson*, 581 F.2d 711, 713, 714 (8th Cir. 1978) (exclusionary rule does not apply in probation revocation proceedings); *United States v. Wiygul*, 578 F.2d 577, 578 (5th Cir. 1978) (same); *United States v. Winsett*, 518 F.2d 51, 53–55 (9th Cir. 1975) (same); *United States v. Farmer*, 512 F.2d 160, 162–63 (6th Cir.), cert. denied, 423 U.S. 987, 96 S.Ct. 397, 46 L.Ed.2d 305 (1975) (same); *United States v. Delago*, 377 F.Supp. 708, 712 (S.D.N.Y.1974) (same), the Government in such cases is required only to purge the taint of illegally obtained evidence from its case, not to drop the case against the alleged wrongdoer. See *Payton v. New York*, 445 U.S. 445, 573, 100 S.Ct. 1371, 1383, n.34, 63 L.Ed.2d 639 (1980).

■ Absent prejudice to the arrestee's defense, then, the Government may continue its proceedings against him as if the illegal action had never taken place. In *Gerstein v. Pugh, supra*, for example, the defendant was arrested and jailed pending trial without a finding of probable cause on the basis of a prosecutor's information. While the Supreme Court held that every jailed person has a right to a judicial determination of probable cause either before or shortly after detention, it stressed that "a conviction will not be vacated on the ground that the defendant was detained pending trial without a determination of probable cause." 420 U.S. at 119, 95 S.Ct. at 866. The defendant's proper remedy was to demand the hearing to which he was entitled, not to have the proceedings against him dismissed. Similarly, in *United States v. Companion*, 545 F.2d 308 (2d Cir. 1976), a probationer ordered to remain in

---

**3.** On January 26, 1979, Officer Pond prepared a second application on Probation Form No. 12, alleging eight additional violations of Condition No. 2. Memorandum of Decision at p. 4 n.1. Judge Zampano has apparently never acted on this form, perhaps because he is awaiting the results of this appeal. The existence of a second petition to revoke probation on the basis of different alleged violations does not foreclose inquiry into the validity of the original proceedings against Basso.

Vermont was arrested in Arizona and was held in custody for 87 days without a preliminary hearing to establish probable cause, while being transported from Arizona back to Vermont which took a long period of time because on the way he was detained at various jails. We held there that, although the probationer's due process right to a prompt preliminary hearing "at or reasonably near the place of the alleged . . . violation or arrest . . . to determine whether there [was] probable cause," *Morrissey v. Brewer*, 408 U.S. 471, 485, 92 S.Ct. 2593, 2602, 33 L.Ed.2d 484 (1972), had been violated, dismissal of the Government's petition for revocation of probation would be unwarranted, given "the established rule that illegal arrest or detention does not void a subsequent conviction." 545 F.2d at 313.[4]

■ Unlike the probationer in *Companion*, appellee Basso never spent a mo-

ment in jail as a result of the arrest that the district court declared invalid. More important still, his defense has been in no way prejudiced by the existence of the quashed arrest warrant. The Government should remain free to rearrest him for the same violation of the conditions of his probation.[5]

■ Turning to the merits of the district court's decision to quash the original warrant for Basso's arrest,[6] we recognize that probation may not be revoked without according the probationer due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756 (1973); see also *Morrissey v. Brewer, supra* (parolees have due process rights to hearings before their parole is revoked). However, due process in this context does not demand that the probation officer establish a violation of probation in order to

---

4. Basso argues in his brief that allowing a revocation proceeding to proceed after an unlawful arrest would reduce a probationer's right not to be arrested illegally to "a formality." This argument must fail, for two reasons. First, any significant deprivation of a probationer's liberty must be accompanied by a prompt hearing to insure that probable cause exists to believe that a violation has taken place. Second, as we noted in *United States v. Companion, supra*, 545 F.2d at 313, an unlawfully arrested probationer's "civil remedies against those denying him his right may survive. See *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 . . . (1971)." See also 28 U.S.C. § 2680. We also suggested in *Companion* that "[i]f a probationer's rights are flagrantly abused, or if preliminary hearings are repeatedly denied to probationers as a group, we reserve, of course, the authority, as a matter of our supervisory power, to order release from custody regardless of when the request is made." 545 F.2d at 313. Here Basso was immediately released on his own recognizance, suffering no deprivation of liberty at all. Moreover, he demanded and received a hearing on the issue of probable cause, which the Supreme Court prescribed in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

The issuance of any arrest warrant here could hardly be characterized as a mere formality. It was issued only after a United States Probation Officer and an Assistant U.S. Attorney furnished detailed facts satisfying a United States district judge that probable cause existed. It would be a gross abuse of discretion to dismiss probation revocation proceedings with prejudice, or to order full release from proba-

tion, merely because officials acting in good faith failed to comport with the technical requirements of a valid warrant, when the resulting arrest did not produce any evidence to be used against the probationer and when the probationer could and did protect himself from loss of liberty by obtaining immediate release and a preliminary hearing.

5. Basso's susceptibility to arrest and revocation of probation has not ceased or been mooted because more than two years have passed since he was placed on two years' probation on January 14, 1977. The probation statute, 18 U.S.C. § 3653, explicitly provides, "At any time within the probation period, *or within the maximum probation period permitted by section 3651 of this title [five years]*, the court . . . may issue a warrant for [a probationer's] arrest for violation of probation occurring during the probation period." (Emphasis added). See also *Nicholas v. United States*, 527 F.2d 1160 (9th Cir. 1976) (probation revocation may take place more than five years after probation has been imposed if arrest warrant was issued before the five–year period expired).

6. We are not prevented from reaching the merits by the Government's failure to argue that the quashing of the warrant was improper in its original brief. Basso did raise the issue of the propriety of the district court order quashing the warrant in his brief, and the Government, as was its prerogative, responded in its reply brief. The issue has therefore been fully placed before us. See 9 Moore's Federal Practice Par. 228.02[2.–3] (1980).

obtain an arrest warrant. A showing of reasonably satisfactory proof of cause is sufficient and it may be less than that required for a search warrant, since the arrested probationer has the right to an immediate preliminary hearing after arrest to determine whether probable cause exists to believe that he has violated his probation.[7] The Court in *Gagnon v. Scarpelli, supra,* recognized that less protections were necessary for probationers than for defendants in a criminal trial. See *United States v. Nagelberg,* 413 F.2d 708, 709 (2d Cir. 1968), *cert. denied* 396 U.S. 1010, 90 S.Ct. 569, 24 L.Ed.2d 502 (1970); *United States v. Smith,* 571 F.2d 370, 372 (7th Cir. 1978); *United States v. Marron,* 564 F.2d 867, 871 (9th Cir. 1977); *United States v. Manuszak,* 532 F.2d 311, 317 (3d Cir. 1976); *Roberson v. State of Connecticut,* 501 F.2d 305, 308 (2d Cir. 1974).

■ The revocation of probation, like revocation of parole, "deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special ... restrictions." *Gagnon v. Scarpelli, supra,* 411 U.S. at 781, 93 S.Ct. at 1759, quoting *Morrissey v. Brewer, supra,* 408 U.S. at 480, 92 S.Ct. at 2600. We have recognized that the conditional liberty possessed by probationers and parolees carries with it a less than absolute right

not to be interfered with by law enforcement officials. In *United States v. Polito,* 583 F.2d 48 (2d Cir. 1978), for example, we stated that a local police officer's detention of a parolee,[8] where a valid warrant had been issued but the relevant federal statute provided that federal officers should execute the warrant, "was not an 'arrest' for Fourth Amendment purposes." 583 F.2d at 56. We further observed that the probable cause necessary to make a warrant valid in parole cases could be established merely by a presentation of "satisfactory evidence" that a person had violated the conditions of his release, a standard looser than that required to satisfy the probable cause requirements for a criminal warrant. 583 F.2d at 52; see 28 C.F.R. § 244(a).[9]

■ Although the district court below indicated awareness that the requirements for issuance of a warrant in probation revocation proceedings are somewhat less stringent than those for criminal arrest warrants delineated in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), it nevertheless declined to view Officer Pond's warrant petition as adequate. First, in evaluating the sufficiency of the allegations underlying the warrant, it refused to consider the two–page memorandum accompanying the petition on Form No. 12,

---

7. Several jurisdictions have held that a preliminary hearing is not required unless the arrested probationer has been incarcerated. See, e. g., *United States v. Sciuto,* 531 F.2d 842, 846 (7th Cir. 1976); *United States v. Tucker,* 524 F.2d 77, 78 (5th Cir. 1975), *cert. denied,* 424 U.S. 966, 96 S.Ct. 1462, 47 L.Ed.2d 733 (1976); *United States v. Strada,* 503 F.2d 1081, 1084 (8th Cir. 1974). This rule assumes, consistently with much of what the Supreme Court has said, that a probationer receives adequate procedural protection through prompt hearing after confinement. Even if not jailed, probationers are assured swift action in the scheduling of hearings by the mandate of 18 U.S.C. § 3653 that "[a]s speedily as possible after arrest the probationer shall be taken before the court for the district having jurisdiction over him."

8. The Supreme Court observed in *Gagnon v. Scarpelli, supra,* 411 U.S. at 782, 93 S.Ct. at 1759, that it did not perceive "any difference relevant to the guarantee of due process be-

tween the revocation of parole and the revocation of probation."

9. See *Morrissey v. Brewer, supra,* 408 U.S. at 471, 92 S.Ct. at 2600 ("We begin with the proposition that the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations"); cf. *United States ex rel. Randazzo v. Follette,* 418 F.2d 1319, 1322 (2d Cir. 1969), *cert. denied,* 402 U.S. 984, 91 S.Ct. 1672, 29 L.Ed.2d 150 (1971) (New York law, under which warrant necessary to arrest parolees for violation of parole is "administrative" and does not depend upon probable cause but upon lesser "reasonable cause," is "sufficient to provide for the lawful arrest of a parolee"); *Alger v. Page Cty. Sheriff's Ofc.,* 408 F.Supp. 978, 979 (W.D.Va.1976) ("The purpose of the warrant is merely to restore [a parolee] to custody and to advise him of the purpose of his reincarceration").

taking the view that the contents of this memorandum were not part of the warrant application and had not been disclosed to probationer Basso or his counsel. In our view this amounted to undesirably rigid formalism. Judge Zampano had no difficulty recognizing that the memorandum was offered in support of the Form No. 12 application and accordingly evaluated the warrant application in light of it. Moreover, the contents of the memorandum were disclosed to the appellees, albeit at a later time. In any event, non–disclosure of the memorandum's contents before the preliminary hearing did not in any way prejudice Basso or render the warrant invalid. This is not a case where the neutral magistrate was left unapprised of either the identity or the reliability of the confidential source conveying the needed information. See, e. g., *Aguilar v. Texas, supra*, 378 U.S. at 113, 84 S.Ct. at 1513. So long as Judge Zampano had sufficient information to issue a warrant, Basso did not have to be provided with that information, or given an opportunity to confront his accusers, until hearings on his alleged violation.[10]

 Judge Burns' second objection to the warrant application, that it was inadequately supported by oath or affirmation, is somewhat vague, and Basso presses no specific objection to the form of the application. Officer Pond's application was admittedly unsworn, but it clearly contained a representation on his behalf that the facts he was stating were true to the best of his knowledge and belief. Even if the warrant

application was faulty in some narrow technical sense (and we are not convinced that it was), this defect should not be sufficient to void the warrant when the facts alleged in the petition and the accompanying memorandum established probable cause, as the district judge conceded, to believe that a violation had taken place,[11] and when the warrant was subject in any case to the somewhat looser requirements accompanying arrest for violation of probation conditions.

Remanded.

10. Trooper Blair's identity might even have been concealed at a preliminary hearing without impropriety. *Morrissey v. Brewer, supra*, 408 U.S. at 487, 92 S.Ct. 2603, explicitly stated the reservation that "if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross examination."

11. Last year, we held in *United States v. Broward*, 594 F.2d 345 (2d Cir.), *cert. denied*, 442 U.S. 941, 99 S.Ct. 2882, 61 L.Ed.2d 310 (1979), that an arrest made under an invalid warrant was nonetheless valid if the arresting officers had probable cause to believe that a crime had taken place. Under the logic of that case, Basso's warrant could not be quashed once Judge Burns found that his arrest was supported by

probable cause, provided the arrest was made in a public place. *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). If it occurred in Basso's home it could be invalidated under the rule of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), which held that non–exigent arrests in a person's home could not take place without a valid warrant. The record does not disclose whether Basso was served with the warrant at his home or in a public place, but does indicate that he came to the magistrate's office voluntarily and without police escort. In any event, we do not rely on *Broward* in this case, since we think that the warrant application filed by Officer Pond was sufficient to make the warrant for Basso's arrest a valid one.